THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| In re Impinj, Inc. Securities Litigation. | CASE NO.: 3:18-CV-05704-RSL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: May 3, 2019<br><br>ORAL ARGUMENT REQUESTED |
|---|---|

**FILED PROVISIONALLY UNDER SEAL PURSUANT TO LOCAL RULE 5(G)(3)**

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. PLAINTIFF FUNDAMENTALLY MISCONSTRUES *OREXIGEN* ..... 1

II. THE COMPLAINT FAILS TO ADEQUATELY PLEAD FALSITY ..... 3

A. Statements Regarding Location Are Not False or Misleading ..... 3

B. Statements Regarding Demand Are Not False or Misleading ..... 5

III. THE COMPLAINT FAILS TO ADEQUATELY PLEAD SCIENTER ..... 6

A. Plaintiff Does Not Plead a Strong Inference of Scienter as to Locationing ..... 6

B. Plaintiff Does Not Plead a Strong Inference of Scienter as to Demand ..... 7

C. CW Reports to, and Investigations by, the Audit Committee and Government Agencies Do Not Plead a Strong Inference of Scienter ..... 8

D. No Other Facts Alleged Give Rise to a Strong Inference of Scienter ..... 8

E. Viewed Holistically, the Non-Culpable Inference Is More Compelling ..... 9

IV. THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION AS TO LOCATION ..... 10

V. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. BRODERSEN ..... 11

VI. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. FEIN ..... 12

CONCLUSION ..... 12

**REPLY ISO DEFENDANTS' MOTION TO DISMISS**
3:18-CV-05704 RSL

-i-

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Batwin v. Occam Networks, Inc.*, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ........ 9

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ........ 11

*Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000) ........ 9

*In re BofI Holding Sec. Litig.*, 2017 WL 2257980 (S.D. Cal. May 23, 2017) ........ 12

*In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222 (S.D.N.Y. 2018) ........ 9

*In re Intel Corp. Sec. Litig.*, 2019 WL 1427660 54615 (N.D. Cal. Mar. 29, 2019) ........ 3

*In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965 (N.D. Cal. 2007) ........ 8

*In re Ocera Therapeutics Sec. Litig.*, 2018 U.S. Dist. LEXIS 219270 (N.D. Cal. Oct. 16, 2018) ........ 3

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ........ 10, 11

*In re Peoplesoft, Inc. Sec. Litig.*, 2000 WL 1737936 (N.D. Cal. May 25, 2000) ........ 7

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996) ........ 3

*In re Vocera Comm'cns, Inc. Sec. Litig.*, 2015 WL 603208 (N.D. Cal. Feb. 11, 2015) ........ 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 2017 WL 3058563 (N.D. Cal. July 19, 2017) ........ 12

*Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018) ........ 1, 2

*Lorenzo v. SEC*, 139 S.Ct. 1094 (2019) ........ 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008) ........ 10

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-ii-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ....................1

*Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018) ....................10, 11

*Police & Fire Ret. Sys. of Detroit v. Crane*, 87 F. Supp. 3d 1075 (N.D. Cal. 2015) ....................8

*Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) ....................9

*Robb v. Fitbit Inc.*, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ....................7, 9

*Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) ....................9

*S. Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ....................9

*SEC v. Pocklington*, 2018 WL 6843665 (C.D. Cal. Nov. 29, 2018) ....................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ....................1, 2, 3, 6, 10

*Wochos v. Tesla, Inc.*, 2019 WL 1332395 (N.D. Cal. Mar. 25, 2019) ....................3

*Zucco Partners v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ....................3

**STATUTE**

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 ........1, 2, 3, 4, 12

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

## INTRODUCTION

Like the Complaint,[1] Plaintiff's Opposition cherry-picks snippets that appear to support Plaintiff's claims and ignores the rest. The Opposition then misconstrues the Ninth Circuit's recent decision in *Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018), *petition for cert. filed sub nom., Hagan v. Khoja*, No. 18-1010 (9th Cir. Jan. 31, 2019), and improperly claims that the Court is not allowed to analyze Plaintiff's snippets within the full context of the documents they are plucked from, though they form the basis of Plaintiff's claims and are clearly incorporated into the Complaint by reference. Plaintiff essentially seeks to muscle Defendants' competing inferences aside, hoping the Court will evaluate the Complaint's allegations in a vacuum. But context and logic show that the Complaint fails to allege with particularity that any of the challenged statements were false or misleading, that any Defendant acted with scienter, or that there is any connection—let alone causation—between the alleged location issue, the decrease in endpoint IC demand, and a loss. The Complaint must be dismissed.

## ARGUMENT

### I. PLAINTIFF FUNDAMENTALLY MISCONSTRUES *OREXIGEN*

Plaintiff concedes that the exhibits cited in the Motion are incorporated into the Complaint by reference, but claims that Defendants improperly rely on them. ECF No. 53 at 1–4.[2] Plaintiff is wrong. ***First***, the exhibits are not "extraneous" to the Complaint; an incorporated document is "part of the complaint" itself. *Orexigen*, 899 F.3d at 994, 1002. In essence, the boundaries of a complaint, and the information a court ***must consider*** on a motion to dismiss governed by the PSLRA, expand to comprise the entirety of the incorporated documents. As the Supreme Court stated in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), "courts must consider . . . documents incorporated into the complaint by reference."[3]

---

[1] Defendants incorporate the terms as defined in their Motion to Dismiss ("Motion" or "Mot.").

[2] Because Plaintiff improperly included arguments addressing the Motion in its Opposition to Defendants' Notice of Incorporation by Reference, ECF No. 53, Defendants respond to those arguments here.

[3] While Defendants' use of the incorporated documents squares with *Orexigen*, *Orexigen* does not overrule Supreme Court precedent. Moreover, the *Orexigen* decision by "a three-judge panel may not overrule a prior decision of the [Ninth Circuit]." *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-1-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

***Second***, while Plaintiff criticizes Defendants' use of a "counter-narrative," Opp. at 1, to determine whether a PSLRA complaint's allegations plead a strong inference of scienter, a court "***must engage in a comparative evaluation***" of "competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314 (emphasis added). Plaintiff would have this Court consider Plaintiff's inferences without considering Defendants' competing inferences at all. This would be improper. "The strength of an inference cannot be decided in a vacuum." *Id*. at 323.

***Third***, Defendants offer the exhibits not "to dispute facts stated in a well-pleaded complaint," Opp. at 1, but to show that, in the full and fair context of the documents from which its allegations are derived, the Complaint does not allege with the requisite particularity a false or misleading statement or a strong inference of scienter, and thus is not well-pleaded. This is not only proper, but the only way Defendants can counter on a motion to dismiss Plaintiff's practice of "selecting only portions of documents that support [its] claims, while omitting portions of those very documents that weaken—or doom—[its] claims." *Orexigen*, 899 F.3d at 1002.

For example, Plaintiff incorrectly complains that Defendants contend Impinj provided locationing "based on [Defendants'] say-so." Opp. at 21. In truth, Defendants actually argued that the alleged falsity of the locationing statements is contradicted by the full text of the documents incorporated by reference into the Complaint, which contain other statements not alleged by Plaintiff to be false or misleading (a) that show "location" as used by Impinj has varied, technical meanings rather than the impermissibly vague meaning used by Plaintiff and (b) that provide context disclosing how Impinj provided locationing, *i.e.*, describing Impinj's locationing technology and products, and the customer use cases in which the technology and products were used. Mot. at 2, 3, 7, 8, 12.[4]

Plaintiff also complains that Defendants improperly rely on facts "manufactured outside the complaint," *i.e.*, that Impinj shipped billions of endpoint ICs before, during, and after the class period, experienced an increase in demand for gateways at the same time endpoint IC

---

[4] The sealed, unredacted version of the Motion is filed as Exhibit B to the Declaration of Christopher M. Petroni in Support of Unopposed Motion for Leave to File Under Seal, ECF No. 41-1.

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-2-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

demand was declining, and had increased revenue throughout most of the class period. Opp. at 21. Plaintiff does not allege that these facts, disclosed in the very same documents containing the alleged misstatements, were false or misleading. Indeed, Plaintiff relies upon them to allege that, at the end of the class period, demand for Impinj's products declined. ¶¶ 79, 173, 175, 179, 182. Plaintiff would have the Court unfairly allow Plaintiff to rely on these facts, contained in documents incorporated into the Complaint by reference, but prohibit Defendants from doing so.

The Motion properly cites the "documents from which the challenged statements came" to show that the statements are not false in context, certain CW allegations are not consistent with those documents and the Complaint's other allegations, and to allow the Court to evaluate competing inferences, as it must. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 932 (9th Cir. 1996); *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 999 (9th Cir. 2009) (rejecting a CW's statement as "contradicted by readily available physical evidence"); *Tellabs*, 551 U.S. at 314.[5] Plaintiff's efforts to have the Court consider alleged misstatements without their context and evaluate Plaintiffs' inferences of scienter in a vacuum should not be countenanced.

## II. THE COMPLAINT FAILS TO ADEQUATELY PLEAD FALSITY

The PSLRA requires a plaintiff to be precise and clear in alleging how the challenged statements were false. This requires a plaintiff to address not only the actual words used by Defendants, but also grapple with their full and fair context.

### A. Statements Regarding Location Are Not False or Misleading

***First,*** Plaintiff repeatedly and falsely asserts that Impinj claimed its technology provides an object's "unique location." In fact, the vast majority of the challenged locationing statements are variations of the statement that Impinj's Platform "delivers each item's unique identity, location, and authenticity." Mot. at 7. But Plaintiff either replaces the word that "unique"

[5] *See also In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *11 (N.D. Cal. Mar. 29, 2019) (citing company's public statements, reasoning that "the relevant context undermines plaintiff's allegations of falsity"); *In re Ocera Therapeutics Sec. Litig.*, 2018 WL 7019481, at *5–6 (N.D. Cal. Oct. 16, 2018) (analyzing alleged misstatements in context of incorporated documents and rejecting plaintiffs' "selective reading"); *Wochos v. Tesla, Inc.*, 2019 WL 1332395, at *2, *5 (N.D. Cal. Mar. 25, 2019) (citing judicially noticed and incorporated documents to reject a CW's contrary statements), *appeal docketed*, No. 19-15672 (9th Cir. 2019).

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-3-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

actually modifies (identity) with an ellipsis, Opp. at 3, 8, 9, 17, or misquotes the statement entirely, claiming it reads "unique location," Opp. at 3, 8, 11. This is an example of Plaintiff "selectively quot[ing]" or omitting "key words" that undermine Plaintiff's argument. Opp. at 11.

***Second,*** [redacted] the Complaint does not adequately allege that Defendants' general statements that the Platform provided an item's location were actually false. The only non-contradictory and Plaintiff-friendly reading of the Complaint, therefore, is that Plaintiff's gripe is not that Impinj did not provide locationing ***at all***, but that Impinj did not provide it ***as accurately as disclosed***. The problem for Plaintiff is that the Complaint only alleges one statement in which Defendants described the accuracy of Impinj's locationing feature—a September 12, 2016 statement on its website that by using Impinj's readers and gateways, a customer could locate pallets "to within 1 to 1.5 meters (about five feet)." ¶ 100.[6] Plaintiff pleads no particularized facts that pallets were not locatable within 1.5 meters in any direction using readers and gateways.

***Third,*** Plaintiff does not argue that the CWs possess reliable location-related technical expertise (Mot. at 9–10), but instead argues that the CWs attended meetings with engineers who did. Opp. at 13–14. These meeting allegations, however, lack the detail necessary to satisfy the PSLRA's particularity requirements. Mot. at 10–11. CW1 and CW2 recall attending meetings, but allege no details regarding the information presented during such meetings, with the sole exception that an engineer once said [redacted]. *Id.* at 16. CW2 alleges no details about [redacted]

---

[6] A similar statement on Impinj's website made just a few weeks earlier, on August 28, 2016, mistakenly stated "1.5 feet" instead of 1.5 meters. ¶ 89. This statement could not have created a material misimpression by investors since it was corrected on September 12, 2016 on the same website.

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-4-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

[REDACTED]. *Id.* at 16–17. While CW3 claims the location issue was a "concern" that was "brought up" or "discussed" during sales meetings, ¶¶ 47, 72, those discussions were clearly among non-technical sales employees.

**B. Statements Regarding Demand Are Not False or Misleading**

***First,*** both the Complaint and the Opposition ***admit that endpoint IC demand did not decline until Q1 2017***. ¶¶ 11, 71, 76; Opp. at 15. This precludes any claim that eight of the ten demand-related statements alleged in the Complaint, all made before the end of Q1 2017 or about actual Q1 2017 results (as opposed to projections of future demand in Q2 2017), were false or misleading. Mot. at 12–13; Opp. at 15 (arguing Plaintiff need not prevail on all alleged misstatements). Plaintiff asserts these statements were nonetheless misleading because location inaccuracy always "limited demand." Opp. at 15. Plaintiff's argument misses the mark. The alleged misstatements were about relative "increased" demand year-to-year or quarter-to-quarter. Since Plaintiff alleges that poor locationing was present before, during and after the class period, whatever impact it had on endpoint IC demand, if any, does not address the falsity of any statements made about its relative increase from one particular period to the next.

***Second,*** Plaintiff ***concedes it is not alleging that Impinj's reported quarterly revenue amounts were false or misleading***. Opp. at 15. As Defendants showed in the Motion, Impinj experienced increasing and/or forecast-exceeding revenues from the time of the IPO through Q2 2017 when it disclosed an all-time record in revenue of $34.1 million. Mot. at 4. This makes an inference of increasing demand more plausible than one of declining demand over that time period. *Id*. at 17–18. Indeed, ***no*** particularized facts support Plaintiff's suggested inference of declining demand in Q1 and Q2 2017. CW3, Plaintiff's sole source of any demand-related claims, does not allege the difference between the stated and actual demand in any given quarter or identify specific customers who did not purchase endpoint ICs because of the alleged locationing issue, let alone quantify a single order by date, particular product, unit volume, or dollar amount lost as a result. *Id*. at 14. Plaintiff has no response to Defendants' argument that the decline in endpoint IC demand in the second half of 2017 could not have been due to poor

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

locationing because sales of the gateways that provide the locationing were increasing. *Id*. at 13.

***Third,*** even if so-called "pull-ins" occurred and sales staff encouraged customers to buy earlier than planned, ***Plaintiff does not dispute that the purchases were made or the associated reported revenue properly recognized***, meaning demand (as measured by sold product or revenue) was accurately disclosed. "Pull-ins" are not illegitimate and do not suggest securities fraud. Mot. at 14 (citing authority); *Tellabs*, 551 U.S. at 325 (pull-ins "legitimate"). Regardless, Plaintiff fails to plead the "who, what, when, where, and how," Opp. at 16, n.2, necessary to allege that any such pull-ins actually occurred.[7]

**III. THE COMPLAINT FAILS TO ADEQUATELY PLEAD SCIENTER**

Plaintiff fundamentally mischaracterizes the legal standards to be applied to scienter allegations on a motion to dismiss, ignoring the Supreme Court's mandate in *Tellabs* that, when evaluating the strength of scienter allegations, a court "***must*** engage" in a holistic, "comparative evaluation," considering not only the inferences Plaintiff offers but also any "plausible, nonculpable explanations" offered by Defendants. *Tellabs*, 551 U.S. at 314, 323–24 (emphasis added). To be "strong," Plaintiff's inference must not only be "not facially implausible," Opp. at 7, but it must also be "cogent and ***at least as compelling*** as any opposing inference," *Tellabs*, 551 U.S. at 324 (emphasis added). Here, considering all of the facts in the Complaint and its incorporated documents, *id.* at 322–23, the nonculpable inference is more compelling.

**A. Plaintiff Does Not Plead a Strong Inference of Scienter as to Locationing**

Plaintiff argues that [REDACTED] regarding locationing establishes his scienter. Opp. at 17. (It says nothing about the scienter of Mr. Fein or Mr. Brodersen who are not alleged to have [REDACTED] Instead, as argued above, it shows that [REDACTED]

---

[7] Plaintiff's repeated attempt to pin its lack of particularity on Defendants' counsel remains disingenuous. Defendants' counsel agreed to work with Plaintiff's counsel in sealing any confidential information that CW3 disclosed and Plaintiff's counsel included in the Complaint, *see* Mot. at 11, n.1 (citing Ex. 15), and has in fact done so multiple times already in this case. The CWs could have stated, and Plaintiff could have pleaded, confidential customer or other information, in any number of ways, including through the use of generic company identifiers like "Company A." That Plaintiff chose not to do so does not relieve it of its burden to plead with particularity. Moreover, CW3's purported fear is further undermined by the fact that CW3 revealed the identity of three customers and the percentage of Impinj's endpoint IC revenue attributable to each customer. ¶ 77, n.25.

[redacted]

Rather than address the critical lack of detail provided by its CWs (Mot. at 15–17), Plaintiff simply rehashes its allegations and insists they establish scienter. Opp. at 17–18. Unlike *In re Peoplesoft, Inc. Sec. Litig.*, 2000 WL 1737936, at *2–3 (N.D. Cal. May 25, 2000), where plaintiffs identified specific "bugs" in the company's software that caused specific customers to refuse to buy it, Plaintiff does not identify specific locationing bug(s), the Impinj product containing such bug(s), or a single lost customer due to inadequate locationing. Opp. at 18. *In re Vocera Comm'cns, Inc. Sec. Litig.*, 2015 WL 603208, at *1 (N.D. Cal. Feb. 11, 2015), is a summary of an oral ruling with a perfunctory discussion of the facts; it is no answer to Defendants' authority that mere meeting attendance fails to establish scienter. Mot. at 16.

Defendants show not only that "it is possible" that [redacted], Opp. at 19, but that CW2 nowhere alleges any Defendants were aware of them, Mot. at 16. Mere access to the wiki platform is not enough. *Id.* Plaintiff's reliance on *Robb v. Fitbit Inc.*, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017), is misplaced because the complaint there alleged not only that the CW was the very person *hired to do the tests*, but also that the CW reported monthly results to the company's COO. *Id.* at *4.

**B. Plaintiff Does Not Plead a Strong Inference of Scienter as to Demand**

***CW3 is clear that the decline in demand began no earlier than Q1 2017.*** ¶¶ 11, 71, 76. If the decline did not begin any earlier than Q1 2017, then it is ***impossible*** for Defendants to have possessed scienter in not disclosing a decline before then. Since Impinj reported on August 3, 2017, and Plaintiff does not contest, an ***all-time high in revenue in Q2 2017***, the more plausible inference is that Defendants did not know of declining demand until at least the end of Q2, and even then only as to Q3. Unfortunately for Plaintiff, ***Defendants disclosed declining demand*** on August 3, 2017 ***at the same time they disclosed the Company's record-setting revenue for Q2***. This creates a more plausible inference that Defendants disclosed declining demand when they learned of it, despite the fact that it was on the heels of the Company's best revenue quarter ever.

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

The only allegations in the Complaint that even hint at any Defendant's state of mind as to declining demand, those of CW3, simply state that Mr. Brodersen was directing sales personnel to "pull-in" sales in 2017. (It says nothing about the scienter of Dr. Diorio or Mr. Fein who are not alleged to have been involved or known about the alleged pull-ins.) Even if true, as the Supreme Court has stated, pull-ins are not illegitimate. Plaintiff admits that these pull-ins do not mean the revenue was bogus. And the Complaint's utter lack of details or corroboration of CW3's story further fails to establish a strong inference of scienter.

### C. CW Reports to, and Investigations by, the Audit Committee and Government Agencies Do Not Plead a Strong Inference of Scienter

In insisting that CW1 and CW2 faced retaliation, Opp. at 18, Plaintiff ignores that the Audit Committee's investigation is entirely inconsistent with an effort to bury their concerns. Mot. at 17, n.2. Plaintiff does not defend its claim that Impinj retaliated against CW3, ¶ 159, likely because no such inference is possible where the Company investigated and reported CW3's concerns to the SEC. *Id.* *Police & Fire Retirement Systems of Detroit v. Crane*, 87 F. Supp. 3d 1075 (N.D. Cal. 2015), does not help Plaintiff, because, unlike here, there were no allegations that the company investigated or disclosed the purportedly improper accounting reported by employees who were "demoted or terminated." *Id.* at 1085. *In re Levi Strauss & Co. Securities Litigation*, 527 F. Supp. 2d 965 (N.D. Cal. 2007), is on point. There, as here, "plaintiffs rel[ied] almost exclusively on" former employees. *Id.* at 987. There, as here, an "audit committee's investigation, with the assistance of outside counsel," failed to turn up support. *Id.* There, as here, a government agency was notified, but was not alleged to have "found any wrongdoing." *Id.* The *Levi Strauss* court granted defendants' motion to dismiss because the more plausible inference was that the former employees "merely disagree[d]" with the company as to the accuracy of its statements. *Id.*

### D. No Other Facts Alleged Give Rise to a Strong Inference of Scienter

***Motive Allegations.*** Plaintiff does not address Defendants' arguments as to their stock sales, thereby dropping this allegation. Mot. at 20. Plaintiff also offers no response to the

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-8-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

argument that the generic desire to raise funds does not contribute to scienter. *Id.* at 19; Opp. at 20. *Fitbit* does not help, as the opinion "did not rest on a finding that an IPO might provide an incentive to inflate a company's prospects." 2017 WL 219673, at *7. As for *Howard v. Everex Systems, Inc.*, 228 F.3d 1057 (9th Cir. 2000), the company was in danger of violating a loan covenant, a specific, non-generic incentive to "inflate sales" not alleged in this case. *Id.* at 1064.

***Impinj's Internal Control Weakness.*** Impinj's disclosure of its material weakness negates scienter. Mot. at 20. The court in *In re CannaVest Corp. Securities Litigation*, 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018), did not address whether voluntary disclosure undermines scienter, and the company in *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *13 (C.D. Cal. July 1, 2008), "falsely represented" that it fixed its control deficiencies when in fact they persisted. *See* Opp. at 20, n.4. Impinj made no such false claim, but forthrightly reported that its material weakness "has not been remediated" despite efforts to do so. Ex. 2 at 35.

***Core Operations.*** Plaintiff's "core operations" argument, Opp. at 19–20, entirely ignores that only Impinj's gateways enable the location function, Mot. at 2; Ex. 2 at 56. Since Plaintiff does not allege how much revenue Impinj's gateways generate, it cannot argue that supposed location inaccuracy is a "fact . . . of such prominence that it would be 'absurd' to suggest" that Defendants did not know it. *S. Ferry LP v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008). Plaintiff's cases are in accord, as each reasons that a specific fact affecting a specific product or operation was so important to the company's success that defendants must have known it. *See Reese v. Malone*, 747 F.3d 557, 576 (9th Cir. 2014) (monitoring oil pipelines for leaks was a core operation of BP in northern Alaska); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1030 (N.D. Cal. 2016) (specific products accounting for 80% of revenue).

**E. Viewed Holistically, the Non-Culpable Inference Is More Compelling**

A holistic approach requires the Court to step back and consider the overall and fundamental logic (or lack thereof) of Plaintiff's allegations. Here, Plaintiff's inference of scienter requires the Court to accept that an allegedly core feature of the Impinj Platform has never worked at all, despite customers buying over 7 billion endpoint ICs throughout 2017 (in

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

addition to the more than 13 billion endpoint ICs Impinj sold in the decade prior, from 2005 through 2015, Mot. at 2), and also buying *increasing* numbers of the gateways that enable that feature during the class period. *Id*. at 20–21. It also requires the Court to believe that it was not until Q1 2017 that this long-uncorrected problem suddenly caused demand for Impinj's endpoint ICs to decline. A more plausible inference is that, while it required further work, Impinj's technology did provide locationing in some fashion, that the non-engineer CWs' concerns were evaluated and rejected as baseless, and that endpoint IC demand declined in the second half of 2017 for the reasons Impinj publicly disclosed. *Id.* at 21; *see Tellabs*, 551 U.S. at 324.

## IV. THE COMPLAINT DOES NOT PLEAD LOSS CAUSATION AS TO LOCATION

Rather than ignore *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018), as Plaintiff incorrectly argues, Defendants explain in their Motion how Plaintiff fails to meet even the more lax standard adopted in that case. Mot. at 22–23; Opp. at 2, 23–24. Though loss causation is highly "'context-dependent,'" Plaintiff must still "trac[e] the loss back to 'the very facts about which defendant[] lied.'" *First Solar*, 881 F.3d at 753. Although a stock price drop "upon the revelation of an earnings miss" (here, a revenue miss) may show loss causation "even if the market was unaware at the time that fraud had concealed the miss," *id.* at 754, such a miss by itself is not enough, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). The "'ultimate issue'" is whether *fraud*, "'as opposed to some other fact, foreseeably caused the plaintiff's loss.'" *First Solar*, 881 F.3d at 753. Here, Plaintiff tries to fit the square peg of an ***undisclosed***, alleged locationing defect into the round hole of a ***disclosed*** decline in demand for endpoint ICs, while touting selective quotes from *First Solar* in hopes of disguising this gap in its logic. Opp. at 23–24. Plaintiff's attempt fails.[8]

Plaintiff fails to trace the loss back, as required under *First Solar*. While Plaintiff argues

---

[8] Plaintiff suggests that *First Solar* rejected *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008), *Oracle*, and their progeny. Opp. at 23. Not so. Instead, these decisions are "variants of the basic proximate cause test" that apply the pleading standard to a loss causation theory based on "market revelation of the fraud." *First Solar*, 881 F.3d at 753–54. In such a case, as in *Metzler* and *Oracle*, the court "evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory." *Id.* at 754. *Metzler* and *Oracle* are on point in showing that Plaintiff did not meet its burden on this theory.

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL
-10-
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

that a decline in demand for Impinj's endpoint ICs serves as a proxy for the disclosure of a hidden locationing defect, Plaintiff has made no attempt to trace declining endpoint IC demand to locationing issues. Mot. at 23. Nor could it. It is a matter of pure logic and common sense that an alleged long-standing locationing defect in Impinj's Platform existing before, during, and after the class period could not have suddenly impacted demand for Impinj's products at the end of the class period. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Similarly, it makes no sense that poor locationing was the cause of the decline in endpoint IC demand in the second half of 2017 when sales of Impinj's gateways, the portion of its Platform that enables locationing, soared during this same 2017 time period. Common sense also dictates that the Company would not sell billions of endpoint ICs during the class period and reach an all-time high in quarterly revenue in Q2 2017 if this locationing defect existed the entire time. That Impinj purportedly "pull[ed-]in" sales to boost revenue does nothing to bridge this chasm, as it addresses the Company's alleged *response to* declining endpoint IC demand, not what caused the decline in the first place. Opp. at 14–15.

Contrary to Plaintiff's mischaracterization, the critical inquiry under the more restrictive standard is not whether the Company "confess[ed] [the fraud] publicly," Opp. at 23, but whether the market "learned of and reacted to" the omitted or misrepresented facts, *Oracle*, 627 F.3d at 392.[9] Plaintiff effectively concedes its failure to satisfy this test, arguing that Impinj's stock price fell on disclosure of reduced "revenue" and "demand," not locationing problems. Opp. at 23. Plaintiff's argument that "analysts connected the decline . . . to product functionality," Opp. at 23 n.5, is unfounded and contradicted by the analyst report itself, Mot. at 23 n.4.

## V. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. BRODERSEN

The Opposition fails to salvage any claim against Mr. Brodersen. Plaintiff does not dispute that Mr. Brodersen made none of the alleged misstatements. Opp. at 24. Instead,

---

[9] That *Oracle* addressed loss causation at the summary judgment stage does not make its reasoning any less binding. 627 F.3d at 392. Under Plaintiff's logic, its own reliance on *First Solar*—which also addresses loss causation in the summary judgment context, 881 F.3d at 752–53—would be misplaced. Opp. at 2, 23.

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL

-11-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Plaintiff argues that Mr. Brodersen somehow controlled the content of statements made by his boss (CEO Diorio) or a person who separately reported to the CEO (CFO Fein). *Id*. There is no particularized allegation (or logic) that supports this contention. There also is no support for the notion that Mr. Brodersen had ultimate authority over any alleged misstatement. Plaintiff fails to distinguish Defendants' citations, and Plaintiff's own citations undercut Plaintiff's argument,[10] Opp. at 24, as each cited case includes a specific reason why the defendant had control over the challenged statements. In *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 3058563, at *8–9 (N.D. Cal. July 19, 2017), defendants were each the CEO of a parent of the company that made the statements. In *SEC v. Pocklington*, 2018 WL 6843665, at *2, *6–7 (C.D. Cal. Nov. 29, 2018), the defendant "provided [the] factual content" for the misstatement. In *In re BofI Holding Sec. Litigation*, 2017 WL 2257980, at *24–25 (S.D. Cal. May 23, 2017), the court articulated specific reasons to believe the defendant CFO controlled the company's false financial statements, including that the CFO certified them.

## VI. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. FEIN

Plaintiff is required to plead a strong inference of scienter as to each defendant separately. Mot. at 15. Here, Plaintiff pleads no allegations of Mr. Fein's scienter. No CW is alleged to have even spoken with him, let alone about location accuracy or endpoint IC demand. He is not alleged to have attended any sales or engineering meetings. He is not alleged to have [redacted] and his mere access to the wiki platform is not enough. He is not alleged to have known about sales "pull-ins" and the Complaint pleads no facts suggesting that Mr. Fein's departure was suspicious.

## CONCLUSION

The Complaint fails to state a claim and should be dismissed in its entirety. It fails adequately to plead falsity, scienter or loss causation, as required by the PSLRA.

---

[10] The Supreme Court's recent decision, *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), also does not help Plaintiff. In *Lorenzo*, the defendant investment banker was held liable despite not being the "maker" of the statement where he sent an email that he knew contained false or misleading statements to investors. *Id.* at 1099, 1101. Mr. Brodersen, on the other hand, "neither *ma[de]* nor *disseminate[d]* false information." *Id.* at 1103 (emphasis added).

REPLY ISO DEFENDANTS' MOTION TO DISMISS
3:18-CV-05704 RSL
-12-
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Dated: April 30, 2019

s/ Barry M. Kaplan

Barry M. Kaplan, WSBA #8661
Gregory L. Watts, WSBA #43995
Stephanie L. Jensen, WSBA #42042
Christopher M.E. Petroni, WSBA #46966
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
Email: bkaplan@wsgr.com
Email: gwatts@wsgr.com
Email: sjensen@wsgr.com
Email: cpetroni@wsgr.com

*Attorneys for Defendants Impinj, Inc., Chris Diorio, Evan Fein, and Eric Brodersen*

**REPLY ISO DEFENDANTS' MOTION TO DISMISS**
3:18-CV-05704 RSL

-13-

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2019, I filed the foregoing with the Clerk of the Court using the CM/ECF system, and served all parties via ECF.

Dated: April 30, 2019

s/ Barry M. Kaplan
Barry M. Kaplan, WSBA #8661