THE HONORABLE ROBERT S. LASNIK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| IN RE IMPINJ, INC., SECURITIES LITIGATION | CASE NO.: 3:18-CV-05704-RSL<br><br>**STIPULATED AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER ADOPTING SAME** |

STIPULATED AGREEMENT RE ESI AND
[PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.  General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. The proportionality standard set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.  ESI Disclosures**

Each party shall promptly disclose to the other party:

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Rule 26(b)(2)(B).

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-1-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**C.    Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

   f. Server, system, or network logs.

   g. Data remaining from systems no longer in use that are unintelligible on the systems in use.

   h. Electronic data (e.g. email, calendars, contact data, notes, text messages, and voicemail) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

STIPULATED AGREEMENT RE ESI AND
[PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-2-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

        i.      Social media data.

**D.**    **Privilege**

1.    With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2.    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Rule 26(b)(3)(A) and (B).

3.    Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

4.    <u>Privilege Log Based on Metadata</u>. The parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Rules.

**E.**    **ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.    <u>Search methodology.</u>

        a.    A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-3-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

1 parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

    b.    Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.

    c.    The producing party shall search both certain non-custodial data sources and ESI maintained by the custodians identified above.

    d.    The fact that any electronic file has been identified in agreed-upon searches shall not prevent any party from withholding such file from production on the grounds that the file is not responsive or that it is protected from disclosure by applicable privilege or immunity.

    e.    Nothing in this section shall limit a party's right to reasonably seek agreement from the other Parties or a court ruling to modify previously agreed-upon search terms or procedures.

3.    <u>Format.</u> The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database and drawing files, should be produced in native format.

    a.    <u>Redactions.</u> The producing party may redact from any TIFF image, and/or withhold any corresponding metadata field, material subject to privilege or other protection from production.

    b.    <u>Enterprise Databases and Database Management Systems.</u> In instances in which discoverable electronically stored information exists in a proprietary or enterprise database

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-4-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

or database management system (e.g., Oracle, SQL server, DB2), the parties will meet and confer regarding the format in which said data exists, and the format in which it should be produced.

   c. <u>Email Threading.</u> Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that in this case they may remove wholly-included, prior-in-time, or lesser-included versions from potential production to reduce all Parties' costs of document review, production, and litigation-support hosting. Nonetheless, each party must include each prior or lesser-included emails on any privilege log, including the required information to substantiate any assertion of privilege as to each prior or lesser-included emails. Following production of most inclusive email threads, and for good cause, a receiving party may make reasonable requests, with respect to most-inclusive email threads particularly identified in the requests, for metadata associated with individual prior or lesser-included emails within the identified most inclusive email threads. The producing party shall cooperate reasonably in responding to any such requests.

   d. <u>Word Processing Files.</u> Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), containing redlining, blacklining, tracked changes and/or comments will be produced in TIFF-image format with tracked changes and comments showing, unless the changes or comments are subject to redaction pursuant to an assertion of privilege or other protection from disclosure.

   e. <u>Parent-Child Relationships.</u> Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file.

   f. <u>Files Produced in Native Format.</u> Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."

4.      De-duplication.  The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party.  However, metadata will be provided identifying the multiple custodians who had custody of such de-duplicated documents.

5.      Metadata fields. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced: Prod Beg; Prod End; Beg Attach; End Attach; Custodian; All Custodians; Document Type; File Name; Doc Ext; File Size; Native File Path; Text File Path; Email Subject; To; From; CC; BCC; Attachment Count; Date/Time Sent; Date/Time Received; Title; Subject; Date/Time Last Mod; MD5 Hash; Page Count; Hidden Data; Email Importance; Email Conversation Index/Thread Text; Time Zone Processed; Date/Time Appointment Start; Date/Time Appointment End; and File Application.

      a.      Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

      b.      Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

      c.      Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

      d.      For all documents or electronic files produced, the following metadata fields for each document or electronic file, to the extent readily available and unless such metadata fields are protected from disclosure by attorney-client privilege, work-product immunity, or common interest privilege will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection. With respect to certain categories of requested

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-6-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

documents and/or information, if the producing party requests modification of the metadata fields, the parties agree to meet and confer in good faith regarding the requested modification.

6. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents shall include a cross-reference file that indicates document breaks and sets forth the Custodian or Source associated with each produced document. Hard-copy documents shall be scanned using Optical Character Recognition technology and searchable ASCII text files shall be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (e.g. the Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

    a. In scanning hard-copy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

    b. OCR text for scanned images of hard copy documents shall be provided for all responsive documents. OCR should be performed and produced on a document level basis and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

    c. The producing party will take reasonable steps to preserve the organizational structure of its documents and will produce its documents with as much of their original structure intact as possible. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained, to the extent possible, as they existed in the original document.

7. <u>Production Media.</u> Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME  
3:18-CV-05704 RSL    -7-    WILSON SONSINI GOODRICH & ROSATI, P.C.  
701 Fifth Avenue, Suite 5100  
Seattle, WA 98104-7036  
Tel: (206) 883-2500  
Fax: (206) 883-2699

media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing party, and the following information: production range(s), and date of delivery.

8. <u>Encryption of Production Media.</u> To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: December 16, 2019

/s/ John C. Roberts Jr.
Barry M. Kaplan, WSBA #8661
Gregory L. Watts, WSBA #43995
John C. Roberts Jr., WSBA #44945
Christopher M.E. Petroni, WSBA #46966
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (206) 883-2699
Email: bkaplan@wsgr.com
Email: gwatts@wsgr.com
Email: jroberts@wsgr.com
Email: cpetroni@wsgr.com

*Counsel for Defendants Impinj, Inc., Chris Diorio, Evan Fein, and Eric Brodersen*

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-8-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

| | | |
|---|---|---|
| 1 | Dated: December 16, 2019 | /s/ Bradley S. Keller |
| 2 | | Bradley S. Keller, WSBA #10665 |
| | | **BYRNES KELLER CROMWELL LLP** |
| 3 | | 1000 Second Avenue, 38th Floor |
| | | Seattle, Washington 98104 |
| 4 | | Telephone: (206) 622-2000 |
| | | Facsimile: (206) 622-2522 |
| 5 | | Email: bkeller@byrneskeller.com |

*Liaison Counsel for Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge*

Dated: December 16, 2019          /s/ Jonathan D. Uslaner

Jonathan D. Uslaner (pro hac vice)
Lauren M. Cruz (pro hac vice)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470
Email: jonathanu@blbglaw.com
Email: lauren.cruz@blbglaw.com

Salvatore Graziano (pro hac vice)
Michael D. Blatchley (pro hac vice)
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: salvatore@blbglaw.com
Email: michaelb@blbglaw.com

*Counsel for Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge*

STIPULATED AGREEMENT RE ESI AND [PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-9-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: Dec. 17, 2019

_____
The Honorable Robert S. Lasnik
United States District Court Judge

STIPULATED AGREEMENT RE ESI AND
[PROPOSED] ORDER ADOPTING SAME
3:18-CV-05704 RSL

-10-

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699