1

The Honorable Robert S. Lasnik

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

10

11

IN RE IMPINJ, INC. SECURITIES
LITIGATION

No. 3:18-cv-05704-RSL

12

13

CLASS ACTION

14

**MOTION FOR (I) PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT AND (II) APPROVAL OF
NOTICE TO THE SETTLEMENT CLASS**

15

16

**NOTE ON MOTION CALENDAR:**
July 31, 2020

17

18

19

20

21

22

23

24

25

26

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. iii

MOTION .......................................................................................................... 1

I.     PRELIMINARY STATEMENT ................................................................ 1

II.    HISTORY OF THE LITIGATION ............................................................ 4

    A.     Selection Of Lead Plaintiff, Preparation Of The Complaint,
         Opposition To Defendants' Motion To Dismiss, and Discovery .......................... 4

    B.     Settlement Negotiations ................................................................ 6

III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 7

    A.     The Settlement Is The Result Of Good Faith, Arm's-Length
         Negotiations By Well-Informed And Experienced Counsel ................................ 9

    B.     The Substantial Benefits For The Settlement Class, Weighed
         Against The Litigation Risks, Support Approval ...................................... 11

    C.     The Proposed Settlement Does Not Unjustly Favor Any Class
         Member ........................................................................................... 15

    D.     The Anticipated Request For Attorneys' Fees and Litigation
         Expenses Is Reasonable ...................................................................... 16

IV.    CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF THE
    SETTLEMENT IS APPROPRIATE .................................................................. 17

    A.     The Requirements Of Rule 23(a) Are Met ......................................... 17

         1.     Numerosity Is Established ......................................................... 17

         2.     Commonality Is Established ....................................................... 18

         3.     Typicality Is Established .......................................................... 19

         4.     Adequacy Is Established ........................................................... 20

    B.     The Requirements Of Rule 23(b)(3) Are Met .................................... 21

         1.     Common Questions Predominate ............................................... 21

         2.     A Class Action Is A Superior Method Of Adjudicating
             Plaintiffs' Claims ............................................................... 22

V.     NOTICE TO THE SETTLEMENT CLASS IS WARRANTED ................................ 22

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-i-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

VI.      PROPOSED SCHEDULE OF SETTLEMENT EVENTS .................................. 23

VII.     CONCLUSION .................................................................................................... 24

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-ii-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## **TABLE OF AUTHORITIES**

**CASES**                                                                            **PAGE(S)**

*In re Anthem, Inc. Data Breach Litig.*,
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...................................................16

*Baker v. SeaWorld Entm't, Inc.*,
    2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) .................................................20

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...............................................................21, 22

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    2015 WL 224631 (S.D. Cal. Jan. 15, 2015)......................................................19

*Brown v. China Integrated Energy Inc.*,
    2015 WL 12720322 (C.D. Cal. Feb. 17, 2015)..............................................17, 18

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014) .....................................................8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................7, 8

*In re Dendreon Corp. Class Action Litig.*,
    No. C11-01291-JLR, ECF No. 90 (W.D. Wash. Apr. 24, 2013)..................................23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)............................................................................21

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .........................................................18, 19, 20

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ..................................................................19

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................9

*In re High-Tech Emp. Antitrust Litig.*,
    2013 WL 6328811 (N.D. Cal. Oct. 30, 2013).....................................................9

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)........................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)......................................................10

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009)..............................................................17, 22

*Linney v. Cellular Alas. P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...........................................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................9

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019).....................................................20

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov.
  27, 2017) ............................................................................................................7

*Nguyen v. Radient Pharm. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ......................................................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................7

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................16

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................9, 22

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................................10

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...........................................................................7

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................8

*In re THQ, Inc. Sec. Litig.*,
  2002 WL 1832145 (C.D. Cal. Mar. 22, 2002).....................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 672820 (N.D. Cal. Feb. 16, 2017) .......................................................9

*In re Washington Mut. Mortgage-Backed Sec. Litig.*,
    276 F.R.D. 658 (W.D. Wash. 2011) ........................................................17, 18

*Whitaker v. Bennett Law, PLLC*,
    2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) ........................................................17

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ........................................................17, 22

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ........................................................8

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ........................................................23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1) ........................................................17

Fed. R. Civ. P. 23(a)(2) ........................................................18

Fed. R. Civ. P. 23(a)(3) ........................................................19

Fed. R. Civ. P. 23(a)(4) ........................................................20

Fed. R. Civ. P. 23(b)(3) ........................................................21

Fed. R. Civ. P. 23(c)(2)(B) ........................................................22

Fed. R. Civ. P. 23(e)(1) ........................................................8

Fed. R. Civ. P 23(e)(2) ........................................................8, 9, 15

Cornerstone Research, *Securities Class Action Settlements: 2019 Review & Analysis* (2020) ........................................................15

Stefan Boettrich & Svetlana Starykh, NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (2019) ........................................................14

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

–v–

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## MOTION

Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("Lead Plaintiff") has reached an agreement with Defendants to settle this action for $20,000,000 in cash.  Lead Plaintiff respectfully moves this Court under Federal Rule of Civil Procedure 23(e)(1) for entry of the Parties' agreed-upon Preliminary Approval Order:

> (1)   preliminarily approving the proposed Settlement to resolve this Action in exchange for a cash payment of $20,000,000;

> (2)   approving the form, content and manner of providing notice to Settlement Class Members; and

> (3)   scheduling a hearing at which the Court will consider final approval of the Settlement, approval of the proposed plan of allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.

The specific provisions of the proposed Settlement and its defined terms are set forth in the Parties' July 10, 2020 Stipulation and Agreement of Settlement.[1]  The relief sought in this motion has been agreed to by Defendants under the Stipulation, and Lead Plaintiff is unaware of any opposition to this Motion.

## MEMORANDUM OF LAW

### I.   PRELIMINARY STATEMENT

After nearly two years of hard-fought litigation, Lead Plaintiff has reached an agreement

---

[1] All capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Stipulation, a copy of which is attached as Exhibit 2.  The Settlement Class includes all persons and entities (including, without limitation, their beneficiaries) who purchased or otherwise acquired the publicly traded common stock of Impinj, Inc. ("Impinj" or the "Company") during the period of July 21, 2016 through February 15, 2018, inclusive (the "Class Period"), and were damaged thereby.  This includes, but is not limited to, those persons and entities who purchased or otherwise acquired their Impinj common stock in, pursuant to, or traceable to the Company's July 21, 2016 initial public offering and December 2, 2016 secondary public offering during the Class Period and were damaged thereby.  Excluded from the Settlement Class are Defendants and certain related parties, as well as any putative Settlement Class Members that exclude themselves by submitting a request for exclusion in accordance with requirements set forth in the Notice that is accepted by the Court.

---

| MOTION FOR PRELIMINARY | -1- | BYRNES KELLER CROMWELL LLP |
| APPROVAL OF SETTLEMENT | | 1000 Second Avenue, 38th Floor |
| (3:18-cv-05704-RSL) | | Seattle, Washington 98104 |
| | | Telephone: (206) 622-2000 |

with Defendants to settle this action for $20,000,000 in cash (the "Settlement"), subject to approval of the Court.  The Settlement was achieved only after Lead Counsel conducted an extensive investigation, defeated in substantial part Defendants' motion to dismiss the Complaint, conducted extensive document discovery, and engaged in arm's-length settlement negotiations, which included an all-day mediation session overseen by a neutral with extensive expertise in mediating securities class actions.  The Settlement was based on a mediator's recommendation that was accepted by the Parties.  Lead Plaintiff respectfully submits that the proposed Settlement is a very favorable outcome for the Settlement Class, particularly when considering the real risks and challenges that investors faced in this action in establishing liability, proving damages, and collecting on any judgment they might obtain.

Having devoted significant efforts to this Action, Lead Plaintiff and Lead Counsel have a firm grasp of the strengths and weaknesses of the claims.  Lead Counsel conducted an extensive investigation into the claims asserted in the Action; interviewed numerous former Impinj employees; drafted a detailed consolidated complaint; consulted with experts in damages, financial economics, and RFID technology; and briefed and argued their opposition to Defendants' motion to dismiss the complaint.  Following the Court's order on the motion to dismiss, Lead Counsel and Lead Plaintiff conducted extensive document discovery, including obtaining and reviewing over 450,000 pages of documents from Defendants and third parties.  As a result, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths, weaknesses, and risks of the Action at the time the Settlement was reached.

Lead Plaintiff respectfully submits that the Settlement appropriately balances Lead Plaintiff's objective of securing the greatest possible monetary recovery for the Settlement Class against the significant risk that the Settlement Class could receive a smaller recovery—or no recovery at all—had litigation continued. While Lead Plaintiff believes its claims had merit, Defendants were equally adamant that the claims lacked merit, and Lead Plaintiff faced a substantial risk that some or all of the remaining claims might be defeated in connection with

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-2-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

expected summary judgment motions, or that the remaining claims would not succeed at trial, or on appeal. Moreover, even if Lead Plaintiff were successful at each stage of litigation, any such recovery would likely not be obtained for at least several years.

This delay would have created substantial additional risks to Lead Plaintiff's ability to recover an amount greater than the $20 million Settlement. As a result of Impinj's financial situation and limits on the amount of its eroding available insurance coverage, there were significant risks that Lead Plaintiff would be unable to collect any substantial monetary judgment obtained through continued litigation. At the time the Settlement was reached, Impinj was not a profitable company (and indeed had only achieved profitability intermittently in its 20-year history) and had only limited cash available. Thus, Lead Plaintiff had reasonable concerns that the Company's financial condition could worsen during further litigation, especially given current economic conditions, such that the Company might not be able to fund an amount as large as the Settlement Amount. Moreover, Impinj's insurance was limited and was a wasting asset that was declining rapidly due to continuing defense and litigation expenses and would likely have been entirely depleted had litigation continued. Under these circumstances, Lead Plaintiff strongly believes that the $20 million settlement is a very favorable result for members of the Settlement Class.

As discussed further below, the proposed Settlement will also resolve the claims asserted in an action filed in New York State court that asserted claims under the Securities Act for shares purchased in two stock offerings during the Class Period. Those claims arose out of the same set of underlying facts as this Action and similar alleged misrepresentations. The New York State court action was stayed in light of this already-pending action, and the plaintiff in that action participated in the mediation and approves and supports the proposed Settlement.

Entry of the Parties' agreed-upon proposed Preliminary Approval Order will begin the process of the Court's consideration of the proposed Settlement and will authorize notice to be sent to the Settlement Class describing the Settlement's terms and conditions. A final approval

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-3-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

hearing (the "Settlement Hearing") will then be conducted to enable the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate.

If the Court grants preliminary approval of the proposed Settlement, notice will be given to members of the Settlement Class informing them of their right to object or opt out of the Settlement Class and the date for the final Settlement Hearing. In advance of the final Settlement Hearing, Lead Plaintiff will submit comprehensive final approval papers that describe Lead Plaintiff's and Lead Counsel's bases for approving the Settlement. These papers will include Lead Plaintiff's motion for final approval of the proposed Settlement and Lead Counsel's motion for Attorneys' Fees and Litigation Expenses, along with detailed supporting declarations.

Lead Plaintiff respectfully proposes the schedule set forth below at page 24 for events related to Notice, Lead Plaintiff's motion for final approval, and the Settlement Hearing.

## II. HISTORY OF THE LITIGATION

### A. Selection Of Lead Plaintiff, Preparation Of The Complaint, Opposition To Defendants' Motion To Dismiss, and Discovery

Impinj is a technology company whose common stock trades on the Nasdaq. During the Class Period, Impinj's primary business consisted of selling products comprising the "Impinj Platform," a hardware and software system that uses radio frequency identification ("RFID") technology to assist companies with inventory management.

On August 27, 2018 and October 2, 2018, two class action complaints were filed in the United States District Court for the Western District of Washington, entitled *Montemarano v. Impinj, Inc. et al.*, C18-5704RSL and *Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge v. Impinj, Inc. et al.*, No. C18-1447RSL, respectively, alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Defendants.

On January 14, 2019, the Court entered an order consolidating these two actions into the Action, ordered that the Action be captioned *In re Impinj, Inc. Securities Litigation*, No. 3:18-cv-

05704-RSL, appointed the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge as Lead Plaintiff for the Action, and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and Byrnes Keller Cromwell LLP as liaison counsel.

On January 31, 2019, Plymouth Country Retirement System filed a class action complaint in New York State Supreme Court entitled *Plymouth County Retirement System v. Impinj, Inc. et al.*, Index No. 650629/2019 (N.Y. Supreme Ct. N.Y. County) (the "New York Action"). The New York Action alleged claims under the Securities Act of 1933 (the "Securities Act") based on purchases of Impinj common stock in or traceable to the Company's July 21, 2016 and December 2, 2016 Offerings. On March 15, 2019, the New York Action was stayed on consent of all parties to that litigation in light of this Action.

Following an extensive investigation, Lead Plaintiff filed on February 13, 2019 the Consolidated Class Action Complaint (the "Complaint") in this Action asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against defendants Chris Diorio, Evan Fein, and Eric Brodersen (the "Individual Defendants") under Section 20(a) of the Exchange Act. The Complaint alleged that, during the Class Period, Defendants made materially false and misleading statements or material omissions about demand for and the capabilities of the Impinj Platform. The Complaint further alleged that the price of Impinj common stock was inflated during the Class Period as a result of Defendants' misstatements and omissions and declined when the truth was revealed through a series of disclosures from August 3, 2017 through February 15, 2018.

On March 19, 2019, Defendants served and filed a motion to dismiss the Complaint in this Federal Action. On April 9, 2019, Lead Plaintiff served its memorandum of law in opposition to this motion and, on April 30, 2019, Defendants served their reply papers. The Court held oral argument on the motion on September 24, 2019.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-5-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

On October 4, 2019, the Court issued an Order granting in part and denying in part Defendants' motion to dismiss the Complaint.  On November 15, 2019, Defendants filed and served their Answer to the Complaint.

Formal discovery commenced in October 2019.  Lead Plaintiff and Defendants prepared and exchanged initial disclosures, requests for production of documents, and interrogatories. Lead Plaintiff also served document subpoenas on nine third parties.  Defendants and third parties produced a total of over 450,000 pages of documents to Lead Plaintiff, and Lead Plaintiff produced over 5,800 pages of documents to Defendants in response to their requests.  Defendants also obtained discovery from Lead Plaintiff's outside investment manager.

### B.    Settlement Negotiations

After the resolution of Defendants' motion to dismiss the Complaint and while discovery was underway, the Parties agreed to engage in private mediation overseen by Michelle Yoshida of Phillips ADR.  A mediation session before Ms. Yoshida was held on May 28, 2020.  After almost twelve hours of mediation, the Parties were unable to reach an agreement.  Following the mediation, with the Parties still at an impasse, Ms. Yoshida issued a double-blind mediator's recommendation that the Actions be settled for $20,000,000 in cash.  On June 10, 2020, Ms. Yoshida informed the Parties that both Plaintiffs and Defendants had accepted the recommendation.

On June 12, 2020, the Parties notified the Court that they had reached an agreement to settle the Action.  ECF No. 89.  The Parties then negotiated and prepared the Stipulation, which sets forth the full terms of the Settlement.

In accordance with the Stipulation, Defendants will pay or cause to be paid $20,000,000 in cash (the "Settlement Amount").  *See* Stipulation ¶ 9.  The Net Settlement Fund (as defined in the Stipulation) will be distributed to eligible Settlement Class Members in accordance with a plan of allocation to be approved by the Court (discussed in more detail below).  In return, Settlement Class Members will give a standard and appropriately tailored release of claims.  *Id*.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-6-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

¶ 5.[2]  In addition, once the Settlement becomes final, the plaintiff in the New York Action will dismiss the New York Action with prejudice.  *Id*. ¶ 8.  As is common in securities class actions, in connection with the Settlement, the Parties have entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class.  *Id.* ¶ 38.  This confidential agreement sets forth the conditions under which Impinj can terminate the Settlement if the requests for exclusion exceed an agreed-upon threshold.  *Id*.[3]

Lead Plaintiff submits that the Settlement warrants preliminary approval in light of the substantial benefit achieved for the Settlement Class through the Settlement, the significant costs and risks of continued litigation, and the fact that the proposed Settlement is the result of arm's-length negotiations by sophisticated parties and experienced counsel overseen by a well-respected mediator.  It is further submitted that preliminary certification of the Settlement Class for purposes of the Settlement is warranted.

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The Ninth Circuit has long recognized a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[4]  Generally, "unless the settlement is clearly inadequate, its

---

[2] Specifically, the scope of the "Released Plaintiffs' Claims" is limited not only to claims arising out of the same factual predicate as the claims asserted in the Action but is further limited to claims that arise out of or relate to purchases or acquisitions of publicly traded Impinj common stock during the Class Period, and does not include claims asserted in pending shareholder derivative actions.  *See* Stipulation ¶ 1(rr).  Thus, the release is properly tailored to the Settlement Class in this case.

[3] The confidential termination agreement is standard in securities class actions, customarily remain confidential, and does not impact the fairness of the Settlement.  *See, e.g.*, *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016), ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'"), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).  The Supplemental Agreement is available for the Court's *in camera* review upon request.

[4] *See also* *Linney v. Cellular Alas. P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-7-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at \*4 (N.D. Cal. June 27, 2014).

Federal Rule of Civil Procedure 23(e) requires court approval of any proposed settlement of a class action to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P 23(e)(2); *Class Plaintiffs*, 955 F.2d at 1275. A district court's review of a proposed class action settlement is a two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

The Federal Rules instruct that a court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). This standard for preliminary approval of class action settlements was newly established by amendments to Rule 23(e) that became effective on December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently. A common formulation was that the court should grant preliminary approval if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at \*4 (N.D. Cal. Jan. 30, 2019); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (same).

---

*of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.").

In considering final approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]  As detailed below, the Settlement reached here warrants preliminary approval.

### A.  The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

In assessing the adequacy of a settlement, courts accord considerable weight to the opinion of experienced and informed counsel in evaluating a proposed class action settlement, as counsel is "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted).  The settlement is entitled to "an initial presumption of fairness" where it is "the result of arm's-length negotiations among experienced counsel." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013); *accord In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672820, at *10 (N.D. Cal. Feb. 16, 2017).

Here, Lead Counsel has decades of experience prosecuting securities class actions, and Lead Plaintiff is a sophisticated institutional investor who actively participated throughout the

---

[5] At final approval, the Court will also consider the Ninth Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2): (i) the strength of Lead Plaintiff's case; (ii) the risk, expense, complexity, and likely duration of further litigation; (iii) the risk of maintaining class action status throughout the trial; (iv) the amount offered in settlement; (v) the extent of discovery completed and the stage of the proceedings; (vi) the experience and views of counsel; and (vii) the reaction of class members to the proposed settlement. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009); *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000).

litigation.  The Settlement was achieved only through intensive arm's-length negotiations, which included a mediation session before Michelle Yoshida of Phillips ADR, an experienced mediator of complex actions.  No agreement was reached at the mediation, but the Parties continued their negotiations with the assistance of Ms. Yoshida and ultimately accepted her mediator's recommendation that the Actions be settled for $20 million.  The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator demonstrate that the proposed Settlement is fair and non-collusive.  *See, e.g.*, *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before reaching the agreement to settle.  Lead Counsel conducted an extensive investigation into the alleged fraud before drafting and filing the Complaint, which included reviewing SEC filings, analyst reports, investor conference call transcripts, press releases, and media reports; conducting interviews of numerous former Impinj employees; and consulting with experts in loss causation, damages, and RFID technology.  Lead Counsel also performed extensive legal research in preparing the complaint, successfully opposing Defendants' motion to dismiss, and preparing its motion for class certification.  Finally, Lead Plaintiff obtained and reviewed a substantial amount of document discovery relevant to Lead Plaintiff's claims in preparation for upcoming depositions.  As a result, Lead Plaintiff and Lead Counsel had a solid basis for understanding the strengths and weaknesses of the claims and defenses in this Action when they entered into the Settlement.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-10-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

### B.    The Substantial Benefits For The Settlement Class, Weighed Against The Litigation Risks, Support Approval

After extensive negotiations, Defendants agreed to settle this Action for $20 million in cash.  This substantial recovery is a significant benefit to the Settlement Class, especially given the meaningful risks posed by continued litigation.  Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the substantial risks they would face in establishing liability and damages and in collecting on any substantial judgment obtained through litigation.

First, while Lead Plaintiff's allegations were sufficiently supported to mostly defeat Defendants' motion to dismiss, proving the claims at trial through admissible evidence was far from certain.  Lead Plaintiff faced significant risks that, at either summary judgment or trial, it would not be able to establish that Defendants' statements about the Impinj Platform were actionable under the federal securities laws.  Defendants would point to the fact that neither the SEC nor any other governmental entity has brought a related action against Impinj, and the Company has never been required by its auditor to restate any of its financial statements.  To the contrary, Defendants could point to the fact that the SEC investigated and declined to pursue action related to the claims and that Impinj's Audit Committee had conducted an internal investigation that concluded no misstatements were made.

Defendants would also continue to argue at summary judgment and trial that their statements were neither false nor misleading.  Lead Plaintiff had alleged two categories of misstatements, both of which presented potential challenges in continued litigation.  First, Lead Plaintiff alleged that Defendants made misstatements about the supposedly "accelerating" or "growing" demand for Impinj's integrated chips ("ICs") without disclosing that demand actually had declined, and that Defendants had artificially inflated IC sales by "pulling through" to the current quarter sales that the Company expected in future quarters. The Court had already dismissed claims based on demand-related false statements made before the first quarter of 2017

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-11-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

because it concluded there was no evidence that demand had stalled or was in decline before that date. With respect to the remaining demand-related claims, Defendants would argue that all of the statements they made about customer demand were accurate historical factual statements, and that there was no improper revenue recognition or untoward sales practices intended to camouflage a decline in demand (a fact that they would argue was supported by the conclusion of the Audit Committee's investigation). Defendants would further contend that they properly announced the decline in demand when it first occurred in mid-2017.

The other category of false statements concerned the capabilities of the Impinj Platform and, specifically, its ability to uniquely identify the location of tagged items. Defendants strenuously argued, and would continue to argue at summary judgment and trial, that these statements were true because the Impinj Platform was able to locate tagged items, as evidenced by the dozens of the purportedly satisfied customers successfully using the Impinj Platform in various commercial and retail settings. Defendants undoubtedly would argue that any internal emails about issues with the Impinj Platform's location capabilities were resolved and overstated, and that any locationing issues concerned only certain limited user applications. There is no way to predict with any certainty how a factfinder would construe the evidence.

Lead Plaintiff faced similar challenges proving the falsity of Defendants' statements about demand for the Impinj Platform. As noted above, the principal reason that Lead Plaintiff contends those statements were false and misleading is because Defendants purportedly had improperly pulled into the current quarter sales that more properly should have occurred in later quarters in order to meet the Company's sales forecasts and disguise declining demand. Defendants have argued, and would have presented evidence at summary judgment and trial, that these "channel stuffing" allegations were meritless, as demonstrated by the findings of the Company's Audit Committee, which was assisted by independent outside counsel and forensic accounting experts, and the SEC's determination not to take action against the Company.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-12-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Lead Plaintiff would also face additional challenges in establishing the scienter element of their claims—*i.e.*, that Defendants knew that the alleged misstatements were false or were deliberately reckless in making them.  Defendants had asserted and would continue to assert that they had no motive to engage in the alleged fraud.  Defendants also would have continued to argue that Lead Plaintiff would not be able to prove scienter because Defendants had a good-faith belief that their locationing statements were truthful given the multiple products that were successfully deployed for locationing uses around the world before, during, and after the Class Period.

Further, Lead Plaintiff would also have faced substantial risks relating to loss causation and damages.  Defendants would have contended at summary judgment and trial that Lead Plaintiff could not establish a causal connection between the alleged misrepresentations and the losses investors allegedly suffered, as required by law, and that some or all of the price declines following each of the alleged corrective disclosures were unrelated to the alleged misstatements. Establishing loss causation with respect to the alleged misstatements about Impinj's "locationing" capability would have been particularly difficult because there was no disclosure by Defendants in the Class Period or after stating that the Impinj Platform did not provide locationing (indeed, Defendants contend that it did) and Defendants would continue to argue that the problems with locationing capabilities did not lead to the decreased demand that was ultimately disclosed.

Moreover, on all these issues, Lead Plaintiff would have to prevail at several stages, including at summary judgment and trial, and on the appeals that would likely follow.  Each of these stages posed meaningful risks and could take years.

If litigation had continued, Lead Plaintiff would also have faced substantial risks regarding collecting any judgment it obtained based on Defendants' ability to pay—a factor which was one of the factors in Lead Plaintiff's determination that the amount of the Settlement and its timing were in the best interest of the Settlement Class.  Impinj's insurance was limited

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-13-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

and was a wasting asset that would have been drastically reduced or completely depleted had litigation continued.  Further, Impinj is not and rarely has been profitable and Impinj had only limited cash available to contribute to any settlement or other recovery.  Impinj had a net loss of $4.3 million for the three months ended March 31, 2020 and an accumulated deficit of $267.1 million as of that date.  In addition, as of March 31, 2020, shortly before the Settlement was reached, Impinj had a total of $119.2 million in cash and short-term investments, $86.3 million in convertible debt, and $89.9 million in liabilities, giving it a net cash balance of only $29.3 million.  Given these financial constraints, Lead Plaintiff had reasonable concerns that the Company might not be able to fund an amount equal to or larger than the Settlement Amount if a judgment were obtained after protracted litigation.  If the concerns about Impinj's ability to pay and the available insurance materialized, the class might have been unable to recover any amount even comparable to the Settlement through litigation—even assuming, as was by no means certain, that Lead Plaintiff prevailed on the merits of its claims.

The Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Lead Plaintiff prevailed at trial and on any appeals.  Lead Plaintiff has consulted with experts on issues relating to damages and loss causation issues, and Lead Counsel has conducted extensive analyses.  The absolute *theoretical maximum* potential damages that could be established at trial if Lead Plaintiff succeeded on every contested issue— and, significantly, *not* accounting for the non-fraud related news on the "corrective disclosure" dates—are estimated as approximately $365 million.  The *realistic maximum* potential damages in this case, however, are estimated as approximately $59 million to $200 million, assuming again that Lead Plaintiff prevailed at trial on its core liability theory.  When considered in relation to this range of likely provable damages, the $20 million Settlement represents approximately 10% to 34% of realistic maximum damages that could most likely be established at trial, if Lead Plaintiff were to prevail.  This level of recovery is substantially above the median recovery in securities class actions.  *See* Stefan Boettrich & Svetlana Starykh, NERA Economic

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-14-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Consulting, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* at 35 (2019) (median recovery for settlements with total damages in this range are 2.6% to 4.7%); Cornerstone Research, *Securities Class Action Settlements: 2019 Review & Analysis* at 20 (2020) (median recovery as a percentage of damages for securities class action settlements in the Ninth Circuit was 4.9%). Moreover, this level of recovery is particularly favorable in light of the serious concerns about proving liability and Defendants' ability to pay a larger amount.

In sum, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement balances the benefits, costs and risks of continued litigation, and the $20 million Settlement represents a very favorable recovery for the Settlement Class.

### C. The Proposed Settlement Does Not Unjustly Favor Any Class Member

In evaluating a proposed Settlement, the Court also assesses the Settlement's effectiveness in distributing relief to members of the Settlement Class and whether it treats members of the Settlement Class equitably. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) and 23(e)(2)(D). Here too, the Court can readily find that the Settlement will likely earn final approval. The proposed Plan of Allocation, which is set forth in the proposed Notice to be mailed to Settlement Class Members, treats class members equitably based on their transactions in publicly traded Impinj common stock.

The Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members demonstrating a loss on their transactions in Impinj common stock. The formula to apportion the Net Settlement Fund among Settlement Class Members, which was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel, is based on the estimated amount of artificial price inflation in Impinj common stock during the Class Period allegedly caused by Defendants' misconduct. Settlement Class Members who purchased shares in Impinj's Initial Public Offering and Secondary Public Offering will receive a 10% enhancement of their Recognized Loss Amount for those transactions in recognition of the fact that those investors possessed claims under the Securities Act, and those Securities Act claims do not

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-15-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

require that plaintiffs prove defendants' fraudulent intent or that the misstatements caused the loss.

Once the Claims Administrator has processed all submitted claims, it will make distributions to eligible Settlement Class Members, until additional redistributions are no longer cost effective.  At such time, any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.

### D.   The Anticipated Request For Attorneys' Fees and Litigation Expenses Is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund and for payment of expenses not to exceed $275,000.  A fee award of 25% is the Ninth Circuit benchmark and is reasonable here.  *See, e.g. In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("in this circuit, the benchmark percentage is 25%"); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees").  A 25% fee award would also befit the substantial risks that Lead Counsel undertook in expending significant time, effort, and resources in pursuing this litigation and obtaining the favorable recovery achieved for the Settlement Class.  Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion under the schedule set by the Preliminary Approval Order.  By granting preliminary approval, the Court does not pass upon the reasonableness of any subsequent fee or expense application, which will be decided at the final Settlement Hearing.

*      *      *

In sum, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, especially since Lead Plaintiff still faced significant hurdles in the prosecution of this Action.  The Settlement's $20 million cash recovery is well within the range of reasonableness,

1  compares favorably against other securities class action settlements, and achieves the certainty of

2  a substantial recovery for the Settlement Class.  Thus, preliminary approval is warranted.

3  **IV.    CERTIFICATION OF THE SETTLEMENT CLASS**
   **FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE**

4

5          "Parties may settle a class action before class certification and stipulate that a defined

6  class be conditionally certified for settlement purposes."  *In re Wireless Facilities, Inc. Sec. Litig.*

7  *II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).  Under the terms of the Stipulation, Defendants agreed,

8  for the sole purpose of settlement and without adjudication of the merits, to certification of the

9  Settlement Class, the appointment of Lead Plaintiff and plaintiff in the New York Action as

10 Class Representatives for the Settlement Class; and the appointment of Lead Counsel as Class

11 Counsel for the Settlement Class.

12        A settlement class, like other certified classes, must satisfy all the requirements of

13 Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation,

14 and one of the three requirements of Rule 23(b).  *See In re Juniper Networks, Inc. Sec. Litig.*, 264

15 F.R.D. 584, 587-88 (N.D. Cal. 2009).  Each of these requirements is satisfied here.

16        **A.     The Requirements Of Rule 23(a) Are Met**

17               **1.     Numerosity Is Established**

18        To satisfy the numerosity requirement, the class must be "so numerous that joinder of all

19 members is impracticable."   Fed. R. Civ. P. 23(a)(1).   "The term 'impracticable' is not

20 synonymous with impossible."  *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *4 (S.D.

21 Cal. Oct. 27, 2014).  '"[N]umerosity is presumed where the plaintiff class contains forty or more

22 members.'"  *In re Washington Mut. Mortgage-Backed Sec. Litig.*, 276 F.R.D. 658, 665 (W.D.

23 Wash. 2011).  Given this low threshold, numerosity generally is assumed to have been met in

24 class actions involving securities traded on national exchanges.  *See Brown v. China Integrated*

25 *Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015).  The Settlement Class here

26 readily meets this test.

Impinj shares were listed and traded during the Class Period on the Nasdaq Global Select Market, which is the highest tier of the broader Nasdaq Stock Market.  The number of Impinj shares outstanding during the Class Period ranged between roughly 17.8 million and 21.0 million, and 3.49 million Impinj shares traded on the Nasdaq each week during the Class Period. In addition, more than 300 unique institutions held Impinj stock during the Class Period, with between 74 and 196 institutional investors holding shares at the ends of each quarter.  In short, the number of potential class members far exceeds the presumptive numerosity threshold of 40 members.  *See Brown*, 2015 WL 12720322, at \*14 (accepting common sense assumption that where, as here, "millions of shares of common stock were traded over the relevant class period," the class "is well in excess of forty members" and collecting cases for this proposition).

## 2.   Commonality Is Established

The commonality requirement looks to whether "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The common question must be "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Washington Mut.*, 276 F.R.D. at 665 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The key to class certification, therefore, is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id*. (emphasis in original).  All questions of fact and law need not be common to satisfy the rule. Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also In re THQ, Inc. Sec. Litig.*, 2002 WL 1832145, at \*3 (C.D. Cal. Mar. 22, 2002) (noting that "courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2)").  Courts routinely recognize that securities fraud actions alleging a common course of conduct based on a "fraud on the market"

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-18-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1   satisfy commonality.[6]

2       Here, there are numerous questions of law and fact common to the Settlement Class.

3   These questions include: (1) whether Defendants violated the federal securities laws; (2) whether

4   Defendants made false statements and/or omissions of material facts; (3) whether Defendants

5   knew or deliberately disregarded that their statements were allegedly false and misleading;

6   (4) whether the price of Impinj common stock was artificially inflated; and (5) whether

7   Defendants' false statements and omissions caused Settlement Class Members to suffer

8   economic losses.  Accordingly, the commonality requirement is met.

9               **3.       Typicality Is Established**

10      Rule 23(a)(3) requires that the "claims or defenses of the representative parties" be

11  "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[R]epresentative

12  claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

13  need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether

14  other members have the same or similar injury, whether the action is based on conduct which is

15  not unique to the named plaintiffs, and whether other class members have been injured by the

16  same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

17  (internal quotation marks omitted).  Here, Plaintiffs and the members of the Settlement Class

18  seek to recover for the same injury: damages for losses caused by the same materially false and

19  misleading statements contained in, or facts omitted from, documents and statements

20  disseminated by Defendants to the investing public at large.

21      The injuries suffered by Plaintiffs are based on the same conduct that injured the

22  proposed Settlement Class Members.  Defendants' material misrepresentations and omissions

23  ───────────────

24  [6] *See, e.g., In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *6 (S.D. Cal. Jan. 15,
    2015); *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 574-75 (C.D. Cal. 2012).  Varying

25  damages between investors—that arise as a result of buying and selling at different times during
    the Settlement Class Period—do not defeat commonality.  *See, e.g.*, *Radient*, 287 F.R.D. at 569.

26  Indeed, in this Settlement, such variations are addressed by the Plan of Allocation for
    disseminating the Net Settlement Fund.

impacted the market prices of Impinj securities identically and thereby affected all members of the Settlement Class similarly.  The losses of the Settlement Class and Plaintiffs therefore arise out of the same wrongful course of conduct.  Accordingly, Plaintiffs' claims are typical of the Class.  *See, e.g.*, *Baker v. SeaWorld Entm't, Inc.*, 2017 WL 5885542, at *7 (S.D. Cal. Nov. 29, 2017) (finding proposed class representative's claims typical of all class members because it "purchased [the defendant company's] Common Stock during the class period for investment purposes"); *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) (finding typicality when "claims arise from the same alleged conduct by Defendants" such as when class members "purchased PPG common stock at artificially inflated prices because Defendants, in violation of federal securities laws, issued materially false or materially misleading statements during the Class Period").

### 4.   Adequacy Is Established

The "adequacy" requirement of Rule 23(a)(4) is satisfied when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A representative is adequate where (a) there is no conflict of interest between the representative and its counsel and absent class members, and (b) the representative and its counsel will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, Plaintiffs' interests are co-extensive with the Settlement Class Members – no conflict exists.  Just like the other members of the Settlement Class, Plaintiffs sustained losses as a result of the alleged material misrepresentations and omissions.  Accordingly, Plaintiffs' interests are directly aligned with the interests of other Settlement Class Members, who were injured by the same allegedly false and misleading statements.

As further evidence of its adequacy, Lead Plaintiff retained experienced counsel, received regular litigation updates, and actively participated throughout the case.  Lead Counsel is experienced, capable of vigorously prosecuting this Action, and satisfies the requirements of Rule 23(g).  By the time the Settlement was reached, Lead Counsel was informed of the

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-20-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

strengths and weaknesses of the claims and was able to use this knowledge to engage in a rigorous negotiation process.  Lead Counsel's skill and experience enabled it to develop a compelling record and convince Defendants and their insurers to settle on terms favorable to the Settlement Class.  Thus, the adequacy requirement is also satisfied.

**B.    The Requirements Of Rule 23(b)(3) Are Met**

A party seeking class certification must also satisfy one of the three subparts of Rule 23(b).  Pursuant to Rule 23(b)(3), the Court must consider: (i) whether questions of law or fact common to class members predominate over questions affecting only individual members; and (ii) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1.    Common Questions Predominate**

The predominance inquiry of Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  In determining whether this standard is met, courts in this Circuit emphasize that common questions of law and fact predominate where, as in this case, the Complaint alleges a "common course of conduct" that affects all Settlement Class Members in the same manner.  *See Blackie v. Barrack,* 524 F.2d 891, 902-03 (9th Cir. 1975).  Moreover, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 276 (2014).

As discussed above, there are numerous questions of law and fact common to the claims of the Settlement Class.  Meanwhile, there are no significant—let alone predominant—individual questions.  If Plaintiffs and each Settlement Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-21-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## 2.   A Class Action Is A Superior Method Of Adjudicating Plaintiffs' Claims

Courts have long recognized that the class action device is properly used in securities actions, and, in fact, the only feasible method to fairly and efficiently adjudicate claims involving a large number of purchasers of publicly traded securities. *See Juniper,* 264 F.R.D. at 592 ("Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum"); *see also Blackie*, 524 F.2d at 901 n.18 (Rule 23(b)(3) is also satisfied because a class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy.").

Here, certification of the Settlement Class is the superior method for resolving the claims of Plaintiffs and the Settlement Class.  Certification of the class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner, and prevent duplicative and individual litigation.

*        *        *

In light of the foregoing, all of the requirements of Rule 23 are satisfied, and thus, the certification of the Settlement Class for purposes of the Settlement is appropriate.

## V.   NOTICE TO THE SETTLEMENT CLASS IS WARRANTED

Upon preliminary approval of the proposed Settlement, notice must be given to class members describing the terms of the settlement in sufficient detail.  *See* Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962 (citations omitted).  In addition, pursuant to the PSLRA, "every settlement notice must include a statement explaining a plaintiff's recovery[.]"  *Wireless*, 253 F.R.D. at 613.  The manner of providing notice must be the best notice practicable under the circumstances, including individual notice by mail to all class members who can be reasonably identified. *See* Fed. R. Civ. P. 23(c)(2)(B).

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-22-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Here, Lead Plaintiff's proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). As outlined in the agreed-upon proposed Preliminary Approval Order, Lead Counsel will cause the Claims Administrator to notify Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and Litigation Expenses. The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in *The Wall Street Journal* and to be transmitted over the *PR Newswire*. Lead Counsel will also cause a copy of the Notice and Claim Form to be readily available on the Settlement website created specifically for this Settlement.

Courts routinely find that comparable notice procedures to those outlined in the agreed-upon proposed Preliminary Approval Order meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *In re Dendreon Corp. Class Action Litig.*, No. C11-01291-JLR, ECF No. 90 (W.D. Wash. Apr. 24, 2013); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully submits the following procedural schedule for the Court's review and approval, which summarizes the deadlines in the proposed Preliminary Approval Order. Under the proposed Preliminary Approval Order, the deadlines for settlement events are based on the date the Court enters the Preliminary Approval Order and the date selected for the final approval hearing, which should be at least 105 days after entry of the Order, or at the

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-23-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Court's earliest convenience thereafter.  The dates set forth in the right-hand column below are the potential dates that would apply if that preliminary approval is granted on July 31, 2020 and the Settlement Hearing is scheduled for November 13, 2020.

| Event | Proposed Deadline | Potential Date |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to potential Settlement Class Members, which date shall be the "Notice Date" (*See* Preliminary Approval Order ¶ 7(b)) | Not later than 15 business days after entry of Preliminary Approval Order | Aug. 21, 2020 |
| Deadline for publishing the Summary Notice (*See* Preliminary Approval Order ¶ 7(d)) | Not later than 10 business days after the Notice Date | Sept. 4, 2020 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (*See* Preliminary Approval Order ¶ 27) | 35 calendar days prior to the Settlement Hearing | Oct. 9, 2020 |
| Deadline for receipt of exclusion requests or objections (*See* Preliminary Approval Order ¶¶ 14, 18) | 21 calendar days prior to the Settlement Hearing | Oct. 23, 2020 |
| Deadline for submission of reply papers in support of final approval and attorneys' fees and expenses (*See* Preliminary Approval Order ¶ 27) | 7 calendar days prior to the Settlement Hearing | Nov. 6, 2017 |
| Settlement Hearing (*See* Preliminary Approval Order ¶ 5) | At least 105 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter | Nov. 13, 2020 |
| Deadline for submitting Claim Forms (*See* Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date | Dec. 19, 2020 |

## VII.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the Parties' agreed-upon proposed Preliminary Approval Order, which would preliminarily approve the proposed Settlement; approve the form, content, and manner of providing notice to Settlement Class Members; and schedule a hearing and related deadlines for final approval of the Settlement, approval of the proposed Plan of Allocation, and consideration of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses.

Dated: July 10, 2020

Respectfully submitted,

**BYRNES KELLER CROMWELL LLP**

*/s/ Bradley S. Keller*
Bradley S. Keller, WSBA# 10665
bkeller@byrneskeller.com
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Tel: (206) 622-2000
Fax: (206) 622-2522

*Liaison Counsel for Lead Plaintiff Employees'*
*Retirement System of the City*
*of Baton Rouge and Parish of East Baton Rouge*

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**

Jonathan D. Uslaner (*Pro Hac Vice*)
jonathanu@blbglaw.com
Richard D. Gluck *Pro Hac Vice*)
rich.gluck@blbglaw.com
Lauren M. Cruz
lauren.cruz@blbglaw.com (*Pro Hac Vice*)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (370) 819-3480

-and-

John C. Browne (*Pro Hac Vice*)
johnb@blbglaw.com
Michael D. Blatchley (*Pro Hac Vice*)
michaelb@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

*Counsel for Lead Plaintiff Employees'*
*Retirement System of the City of Baton Rouge*
*and Parish of East Baton Rouge and*
*Lead Counsel for the Settlement Class*

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-25-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**THORNTON LAW FIRM LLP**
Guillaume Buell
gbuell@tenlaw.com
1 Lincoln Street
Boston, MA 02111
Tel:  (617) 720-1333

*Counsel for Plymouth County Retirement System*

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-26-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Bradley S. Keller*
Bradley S. Keller, WSBA# 10665

*Liaison Counsel for Plaintiff Employees'*
*Retirement System of the City of Baton Rouge and*
*Parish of East Baton Rouge*

MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT
(3:18-cv-05704-RSL)

-27-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000