1

The Honorable Robert S. Lasnik

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

10

11

IN RE IMPINJ, INC. SECURITIES
LITIGATION

No. 3:18-cv-05704-RSL

12

CLASS ACTION

13

**LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN
OF ALLOCATION**

14

15

**NOTE ON MOTION CALENDAR:**
(Settlement Hearing Date)
November 19, 2020 at 1:30 p.m.

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
(3:18-cv-05704-RSL)

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL................................. 3

      A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class .................................................................................................. 4

      B.      The Settlement Was Reached After Arm's-Length Negotiations Between Experienced Counsel and Mediation with an Experienced Mediator .......................................................................................... 4

      C.      The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors ........................................... 5

            1.      The Risks of Establishing Liability and Damages ...................... 6

            2.      The Settlement Is Reasonable in Light of the Likely Recoverable Damages ................................................................ 8

            3.      The Costs and Delays of Continued Litigation........................... 9

            4.      The Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval ................................................................................... 9

      D.      The Settlement Treats Class Members Equitably ................................. 10

III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................... 11

IV.     NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.......................................... 12

V.      CONCLUSION.......................................................................................... 12

MOTION FOR FINAL APPROVAL OF              -i-
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................11

5

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ...................................................................................................4

6

7

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ..............................................................................5

8

9

*Churchill Village L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .....................................................................................4

10

11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................11

12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..........................................................3

13

14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................4, 6

15

16

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ........................................................12

17

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................................10

18

19

*IBEW v. Int'l Game Tech.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..............................................................8

20

21

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ....................................................................4

22

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..........................................................5

23

24

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .............................................................11

25

26

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................10

---

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-ii-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1
2

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) ................................................................................3

**OTHER AUTHORITIES**

CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2019
    REVIEW AND ANALYSIS (2020) .............................................................................8

Fed. R. Civ. P. 23 ........................................................................ *passim*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-iii-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## I.   **PRELIMINARY STATEMENT**

Subject to Court approval, Lead Plaintiff has agreed to settle this Action in exchange for a cash payment of $20,000,000.00, which Defendants have deposited into an escrow account.  Lead Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate and satisfies all the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure. As detailed in the accompanying Declaration of Jonathan D. Uslaner ("Uslaner Declaration") and summarized below, the Settlement is an excellent result for the Settlement Class in light of the significant risks posed by ongoing litigation, including risks in proving the falsity of Defendants' statements, scienter, loss causation, and the amount of likely damages.

The Settlement was reached only after arm's-length settlement negotiations between experienced counsel, which included a full-day mediation.  Before the Settlement was agreed to, Lead Counsel conducted an extensive investigation into the claims asserted; interviewed dozens of former Impinj employees; drafted a detailed consolidated complaint; consulted with experts in damages, financial economics, and RFID technology; briefed and argued the opposition to Defendants' motion to dismiss; and conducted extensive discovery, including a review of nearly half-a-million pages produced by Defendants and numerous third parties.  ¶¶ 3, 14-39.[1]  As a result, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths, weaknesses, and risks of the Action at the time the Settlement was reached.

Michelle Yoshida of Phillips ADR, an experienced class-action mediator, assisted in the settlement negotiations.   The mediation process included the preparation of detailed written mediation statements concerning liability and damages.   ¶¶ 40-41. Following the mediation session, which ended without resolution, Ms. Yoshida made a mediator's recommendation, on a double-bind basis, that the Parties settle the Action for $20,000,000.00, which the Parties accepted.  ¶ 42.

---

[1] In this memorandum, citations to "¶ __" refer to paragraphs in the Uslaner Declaration.

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1  Lead Plaintiff and Lead Counsel believe that the Settlement is particularly favorable
2  given the risks of continued litigation.  ¶¶ 47-65.  While Lead Plaintiff believes its claims had
3  merit, Defendants were equally adamant that the claims failed.  ¶¶ 48, 59.  Lead Plaintiff faced a
4  substantial risk that some or all of the remaining claims might be defeated in connection with
5  expected summary judgment motions, or that the remaining claims would not succeed at trial, or
6  on appeal.  Moreover, even if Lead Plaintiff were successful at each stage of litigation, any such
7  recovery would likely not be obtained for years.

8  This delay would have created substantial additional risks to Lead Plaintiff's ability to
9  recover an amount greater than the $20 million Settlement.  Impinj is not a profitable company,
10  has amassed a deficit of $267.1 million, and has limited cash.  ¶ 63.  As a result, there was a
11  significant risk that Lead Plaintiff would be unable to collect any substantial monetary judgment
12  obtained through continued litigation. Moreover, Impinj's insurance was limited and was
13  declining rapidly due to continuing defense and litigation expenses and would likely have been
14  entirely depleted had litigation continued.  *Id.*

15  The Settlement has the full support of the Court-appointed Lead Plaintiff, a sophisticated
16  institutional investor that took an active role in supervising the litigation and settlement
17  negotiations.  *See* Declaration of Jeffrey Yates (Ex. 2) ("Yates Decl."), at ¶¶ 3-7.  In addition,
18  although the deadline to request exclusion from the Settlement Class or object to the Settlement
19  has not yet passed, to date, no Settlement Class Member has objected to the Settlement and no
20  requests for exclusion have been received.  ¶ 72; Miller Decl. ¶ 12.[2]

21  Given these considerations and the other factors discussed below, Lead Plaintiff
22  respectfully submits that the Settlement is fair, reasonable, and adequate and warrants final
23  approval.  Additionally, Lead Plaintiff requests that the Court approve the Plan of Allocation,
24  which was set forth in the Notice previously approved by the Court.  The Plan of Allocation,

25
26  [2] The deadline for filing of objections and receipt of requests for exclusion is October 29, 2020.
Lead Plaintiff will address any requests for exclusion and objections that may be received in its
reply papers, which will be filed on November 12, 2020.

MOTION FOR FINAL APPROVAL OF                    -2-
SETTLEMENT AND PLAN OF ALLOCATION
 (3:18-cv-05704-RSL)

which Lead Counsel developed in consultation with Lead Plaintiff's damages expert, provides a reasonable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims based on damages they suffered on purchases of Impinj common stock.

## II.   THE SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims. *See* Fed. R. Civ. P. 23(e).  A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In addition, district courts in the Ninth Circuit consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-3-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).   To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017).

Here, there is no conflict between Lead Plaintiff and the Settlement Class.  Lead Plaintiff and the other Settlement Class Members all purchased Impinj common stock during the Class Period and were damaged by the same alleged false and misleading statements about the capabilities of and demand for the Impinj Platform.  If Lead Plaintiff proved its claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Moreover, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement.  Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 5A-4 to the Uslaner Declaration) and was able to successfully conduct the litigation against skilled opposing counsel.

### B.   The Settlement Was Reached After Arm's-Length Negotiations Between Experienced Counsel and Mediation with an Experienced Mediator

In weighing approval of a class action settlement, courts also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  This includes consideration of circumstances bearing on the procedural fairness of the settlement, including

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
 (3:18-cv-05704-RSL)

-4-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

(i) the presence or absence of any indicia of collusion; (ii) the involvement of a mediator; and (iii) counsel's understanding of the strengths and weakness of the case.

Here, the Settlement was reached only after arm's-length negotiations between the Parties, which included a mediation. *See* Declaration of Michelle Yoshida (Ex. 1), at ¶¶ 6-13.  Before the mediation, the Parties prepared and exchanged detailed mediation statements concerning liability and damages.   ¶ 41.   At the mediation session, the Parties engaged in a full day of vigorous settlement negotiations with the assistance of the mediator, Ms. Yoshida.  *Id.*   The mediation ended without any agreement reached.   In the days after the mediation, Ms. Yoshida issued a double-blind mediator's recommendation to settle the case for $20,000,000.  ¶ 42.

The fact that the Parties reached a settlement after arm's-length negotiations between experienced counsel creates a presumption of its fairness.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").   The involvement of an experienced mediator also "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018).

The Parties and their counsel were knowledgeable about the strengths and weaknesses of the case before reaching the agreement to settle it.  As described in the Uslaner Declaration, by the time of the mediation, Lead Counsel had (i) conducted an extensive investigation that included interviews of many former Impinj employees; (ii) performed extensive legal and factual research in preparing the Complaint and opposing Defendants' motion to dismiss; (iii) worked with experts; and (iv) engaged in substantial fact discovery, including reviewing approximately a half-million pages of documents produced by Defendants and numerous third-parties.  ¶¶ 14-39.

**C.    The Relief that the Settlement Provides for the Settlement Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

In determining whether a class-action settlement is "fair, reasonable, and adequate," the

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-5-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Court also considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This factor under Rule 23(e)(2)(C) encompasses four of the seven factors of the traditional *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement.  *See Hanlon*, 150 F.3d at 1026.  As demonstrated below, these factors further support approval of the Settlement.

### 1.   The Risks of Establishing Liability and Damages

While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious, they recognize that this Action presented several substantial risks. As discussed in detail in the Uslaner Declaration, continued litigation of the Action presented significant risks that Lead Plaintiff would be unable to establish liability, loss causation, or damages or might not be able to collect on a full judgment obtained.  ¶¶ 47-48.

### (a)   Risks To Proving Liability

*Falsity.*   Defendants have consistently argued that their challenged statements about the Impinj Platform's ability to locate tagged items and the demand for the Company's products were neither false nor misleading when made.  Lead Plaintiff would have faced significant hurdles in proving this essential element of its claims.  This was not a case in which the Company was required by its auditor to restate any of its financial statements.  ¶ 52.  Nor was any action ever brought against Impinj by the SEC or other governmental entity.  In fact, the SEC investigated and, following its review, declined to pursue an action against Impinj.  *Id.*

At summary judgment, trial, and on appeal, Defendants would have continued to assert that the Impinj Platform and its component parts were successfully deployed by customers during the Class Period.  ¶ 50.   They would have also continued to assert that the vast majority of the Company's revenues came from the sales of products for uses that did not involve locationing. ¶ 54.  With respect to Lead Plaintiff's claims related to alleged misstatements about demand for

the Impinj Platform (and alleged "channel stuffing" to conceal the declining demand), Defendants would continue to argue that they accurately reported sales data to investors.  ¶¶ 51-52.  In support of this contention, Defendants would have pointed to the fact that the Complaint's allegations were subject to an internal investigation by Impinj's Audit Committee, which concluded no misstatements were made.  ¶ 52.

*Scienter.*  Lead Plaintiff also would have faced challenges proving that Defendants made their statements with the intent to mislead investors or with deliberate recklessness. ¶¶ 55-57. Defendants would have argued that the fact that Impinj had customers successfully deploying those products refutes any claim that Defendants did not believe their locationing statements when they made them, and that the Audit Committee's findings refute any allegation that Defendants knew or should have known that the Company's sales were driven by improperly pulling in sales from future periods.  ¶¶ 56-57.

### (b)       Risks To Proving Loss Causation and Damages

Even if Lead Plaintiff were able to prove falsity and scienter at trial, it still faced significant risks in proving loss causation and damages.  Defendants would have contended at summary judgment and trial that Lead Plaintiff could not establish a causal connection between the alleged misrepresentations and the losses investors suffered, as required by law.  Defendants and their experts would have argued that Impinj never disclosed that the Impinj Platform could not identify the unique location of tagged items and, thus, there was never a corrective disclosure establishing a causal connection between Defendants' alleged misstatements about locationing and the stock price declines alleged in the Complaint.  ¶¶ 59-60.  If Defendants were to prevail on this issue, investors would not have recovered.  ¶ 60.

### (c)       Risks of Being Unable to Collect on a Full Judgment

Lead Plaintiff also faced a substantial risk in collecting on a full judgment obtained, given the limited insurance and available Company funds.  Impinj's insurance was a wasting asset that would have been drastically reduced or completely depleted had litigation continued.  ¶ 63.  The

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
 (3:18-cv-05704-RSL)

-7-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1   Company itself is funding a significant percentage (27%) of the settlement here—unlike many

2   securities fraud settlements—reflecting the limits on insurance.  *Id.*  Moreover, Impinj is not and

3   rarely has been profitable in its history, and had only limited cash available to contribute to any

4   settlement or other recovery.  The Company reported a net loss of $4.3 million for the quarter

5   immediately preceding the mediation, an accumulated deficit of $267.1 million, and a net cash

6   balance of only $29.3 million.  *Id*.  All of these facts created a real danger that Lead Plaintiff and

7   the Settlement Class would have recovered a lesser amount if the Action proceeded through

8   summary judgment, trial, and appeals.

9          **2.**        **The Settlement Is Reasonable in Light of the Likely Recoverable Damages**

10          The Settlement is also a favorable result when considered in relation to the amount of

11   damages that could realistically be established at trial, assuming Lead Plaintiff prevailed on all

12   liability issues (which was far from certain).  The absolute *theoretical* maximum potential

13   damages that could be established at trial if Lead Plaintiff succeeded on every contested issue—

14   but *not* accounting for the non-fraud related news on the "corrective disclosure" dates—are

15   estimated to be approximately $365 million. ¶ 62.  The *realistic* maximum range of potential

16   damages in this case, meanwhile, are estimated to be between $59 million and $200 million,

17   assuming again that Lead Plaintiff prevailed at trial on its core liability theory.  *Id*.  Thus, the $20

18   million Settlement represents approximately 10% to 34% of the realistic maximum recoverable

19   damages.  *Id*.

20          The level of recovery achieved through the Settlement—10% to 34% of the realistic

21   maximum recoverable damages—is greater than the normal recovery amount in comparable

22   securities class action settlements.  The median settlement in securities fraud class actions from

23   2010 through 2018 with damages estimated between $150 and $249 million was 4%, and the

24   median recovery in all securities class actions in the Ninth Circuit from 2010 through 2019 was

25   4.9% of estimated damages.  *See* Cornerstone Research, Securities Class Action

26   Settlements: 2019 Review and Analysis (2020) (Ex 3) at 6, 20; *see also IBEW v. Int'l Game*

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
(3:18-cv-05704-RSL)
-8-
BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1  *Tech.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement of "about 3.5% of

2  the maximum damages that Plaintiffs believe[d] could be recovered at trial" and finding it "within

3  the median recovery in securities class actions settled in the last few years").

### 3.    The Costs and Delays of Continued Litigation

4

5  The costs and delays that would be required before any recovery could be obtained

6  through litigation also support approval of the Settlement.  If the litigation had continued,

7  additional costs and delays would have been incurred in engaging in expert and fact discovery and

8  prevailing at several additional stages: class certification, summary judgment, and finally, at trial.

9  Further, if Lead Plaintiff were to prevail at trial, it would also need to prevail on any appeal that

10  would likely follow.  This process would take years, require substantial costs, and present new

11  risks at each stage.  The Settlement avoids these costs and delays and provides a substantial and

12  certain benefit to the Settlement Class.

### 4.    The Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval

13

14  Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class

15  is adequate in light of "the effectiveness of any proposed method of distributing relief to the class,

16  including the method of processing class-member claims;" "the terms of any proposed award of

17  attorney's fees, including timing of payment;" and "any agreement required to be identified under

18  Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors also supports approval

19  of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

20  *First*, the procedures for processing claims and distributing the Net Settlement Fund to

21  eligible claimants in this case are well-established, effective methods that have been widely used

22  in securities class actions.  The proceeds of the Settlement will be distributed to class members

23  who submit eligible Claim Forms with required documentation to the Court-appointed Claims

24  Administrator, A.B. Data, Ltd. ("A.B. Data").   A.B. Data will provide claimants with an

25  opportunity to cure any deficiencies in their claims or request review of the denial of their claim

26

MOTION FOR FINAL APPROVAL OF                    -9-
SETTLEMENT AND PLAN OF ALLOCATION
 (3:18-cv-05704-RSL)

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

by the Court and will then mail or wire claimants their *pro rata* share upon approval of the Court.[3]

*Second*, the relief provided is also adequate when the terms of the proposed award of attorney's fees are taken into account.  As discussed in the accompanying Fee Memorandum, the proposed attorneys' fee of 25% of the Settlement Fund, to be paid upon approval by the Court, is the "benchmark" percentage in the Ninth Circuit, consistent with awards in similar cases and reasonable in light of counsel's efforts.  Moreover, approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶ 17.

*Lastly*, Rule 23 asks the court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3).  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  Here, the only such agreement (other than the Stipulation itself) is the Parties' confidential Supplemental Agreement, which sets forth the conditions under which Impinj may terminate the Settlement if the requests for exclusion from the Settlement Class reach a specified threshold.  *See* Stipulation ¶ 38.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) (same).

## D.   The Settlement Treats Class Members Equitably

In determining whether a class action settlement is "fair, reasonable, and adequate," courts also consider whether the Settlement treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).  The proposed Settlement here treats members of the Settlement Class equitably.  As discussed below in Part III, under the proposed Plan of Allocation, all eligible claimants will receive their *pro rata* share of the recovery based on damages they suffered that were attributable to the alleged fraud.

---

[3] The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or value of Claims submitted.  *See* Stipulation ¶ 14.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-10-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

E.      **The Reaction of the Settlement Class**

The positive reaction of the Settlement Class to date likewise favors approval of the Settlement. *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016). Pursuant to the Preliminary Approval Order, the Notice of Settlement was mailed to 59,669 potential Settlement Class Members.  Miller Decl. (Ex. 4) ¶ 8.  While the deadline for Settlement Class Members to exclude themselves or object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received, *see* ¶ 72, and no requests for exclusion have been received, *see* Miller Decl. ¶ 12.

III.    **THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

Lead Plaintiff also seeks approval of the proposed Plan of Allocation for the Settlement proceeds, which was set forth at pages 13 to 16 of the Notice to Settlement Class Members.  The standard for approval of a plan of allocation is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).   An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced class counsel.   *See Rieckborn v. Velti PLC,* 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015).

Lead Counsel developed the Plan of Allocation with the assistance of Lead Plaintiff's damages expert.   ¶ 74.  The Plan provides for the distribution of the Net Settlement Fund to Settlement Class Members on a *pro rata* basis based on the extent of their injuries attributable to the alleged fraud.  ¶¶ 74-75.  In developing the Plan, Lead Plaintiff's expert calculated the amount of artificial inflation in Impinj common stock that was allegedly caused by Defendants' alleged misstatements and omissions and adjusted for price changes attributable to market factors.  ¶ 76.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Impinj common stock that is listed in the Claim Form that is supported by adequate documentation.  In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and on the date of sale, and

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-11-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

(ii) the difference between the actual purchase and sales prices.  ¶ 77.[4]  The sum of a claimant's Recognized Loss Amounts for all of his Class Period purchases is the claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  ¶ 80.

## IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

In accordance with the Court's Preliminary Approval Order, A.B. Data began mailing copies of the Notice and Claim Form (the "Notice Packet") to potential Settlement Class Members on August 19, 2020.  *See* Miller Decl. (Ex. 4) ¶¶ 3-5.  As of September 24, 2020, A.B. Data had mailed 59,669 copies of the Notice Packet by first-class mail to potential Settlement Class Members and nominees.  *See id.* ¶ 8.  In addition, A.B. Data caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on September 2, 2020.  *See id.*  ¶ 9.   A.B. Data also established a dedicated settlement website, ImpinjSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form and other relevant documents.  *See id.* ¶ 11.  The Notice and Claim Form are also made available on Lead Counsel's website, www.blbglaw.com.  *See* Uslaner Decl. ¶ 71.

The Notice provided to the Settlement Class satisfied all the requirements of due process, Rule 23, and the PSLRA.  *See Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar notice program).

## V.   CONCLUSION

For these reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation.

---

[4] The Plan of Allocation also takes into account the PSLRA's limitations on recovery for shares sold during the 90-day period after the Class Period or held at the end of that period, ¶ 78, and takes into account the strength of additional claims possessed by purchasers of common stock in Impinj's initial public offering and secondary public offering by enhancing the Recognized Loss Amounts on those transactions by 10%.  ¶ 79.

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)                                    -12-                    BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

1    Dated: September 25, 2020                    Respectfully submitted,

2                                                 **BYRNES KELLER CROMWELL LLP**

3                                                 */s/ Bradley S. Keller*

4                                                 Bradley S. Keller, WSBA# 10665
                                                  bkeller@byrneskeller.com
5                                                 1000 Second Avenue, 38th Floor
                                                  Seattle, WA 98104
6                                                 Tel: (206) 622-2000
                                                  Fax: (206) 622-2522
7
                                                  *Liaison Counsel for Lead Plaintiff Employees'*
8                                                 *Retirement System of the City*
                                                  *of Baton Rouge and Parish of East Baton Rouge*
9

10                                                **BERNSTEIN LITOWITZ BERGER**
                                                  **& GROSSMANN LLP**
11
12                                                Jonathan D. Uslaner (*Pro Hac Vice*)
                                                  jonathanu@blbglaw.com
13                                                Richard D. Gluck *Pro Hac Vice*)
                                                  rich.gluck@blbglaw.com
14                                                Lauren M. Cruz
                                                  lauren.cruz@blbglaw.com (*Pro Hac Vice*)
15                                                2121 Avenue of the Stars, Suite 2575
                                                  Los Angeles, CA 90067
16                                                Tel: (370) 819-3480

17                                                -and-

18
                                                  John C. Browne (*Pro Hac Vice*)
19                                                johnb@blbglaw.com
                                                  Michael D. Blatchley (*Pro Hac Vice*)
20                                                michaelb@blbglaw.com
                                                  1251 Avenue of the Americas, 44th Floor
21                                                New York, NY 10020
                                                  Tel: (212) 554-1400
22                                                Fax: (212) 554-1444

23
                                                  *Counsel for Lead Plaintiff Employees'*
24                                                *Retirement System of the City of Baton Rouge*
                                                  *and Parish of East Baton Rouge and*
25                                                *Lead Counsel for the Settlement Class*

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**THORNTON LAW FIRM LLP**
Guillaume Buell
gbuell@tenlaw.com
1 Lincoln Street
Boston, MA 02111
Tel:  (617) 720-1333

*Counsel for Plymouth County Retirement System*

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
  (3:18-cv-05704-RSL)

-14-

BYRNES KELLER CROMWELL LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.


/s/ Bradley S. Keller
Bradley S. Keller, WSBA# 10665

*Liaison Counsel for Plaintiff Employees'
Retirement System of the City of Baton Rouge and
Parish of East Baton Rouge*

MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND PLAN OF ALLOCATION
 (3:18-cv-05704-RSL)                        -15-                    BYRNES KELLER CROMWELL LLP
                                                                    1000 Second Avenue, 38th Floor
                                                                    Seattle, Washington 98104
                                                                    Telephone: (206) 622-2000