The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE IMPINJ, INC. SECURITIES LITIGATION | No. 3:18-cv-5704-RSL<br><br>**ORDER APPROVING DISTRIBUTION PLAN** |

ORDER APPROVING
DISTRIBUTION PLAN

WHEREAS, this matter was brought before the Court by way of Lead Plaintiff's motion to determine whether the proposed Distribution Plan of the Net Settlement Fund created by the Settlement achieved in the Action should be approved. The Court having reviewed and considered all the materials and arguments submitted in support of the motion, including the Memorandum of Law in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan and the Declaration of Eric J. Miller in Support of Lead Plaintiff's Unopposed Motion for Approval of Distribution Plan (the "Miller Declaration"); and

WHEREAS, this Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 9, 2020 (Dkt. # 91-2) (the "Stipulation") and the Miller Declaration, and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation and Miller Declaration.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. **<u>Jurisdiction</u>** – The Court has jurisdiction to enter this Order and over the subject matter of the Action as well as personal jurisdiction over all Parties to the Action, including each of the Settlement Class Members, for purposes of this Settlement.

2. **<u>Notice</u>** – Notice of Lead Plaintiff's motion for approval of the proposed Plan of Allocation was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for approval of the proposed Plan of Allocation satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

3. **<u>Distribution Plan Approval</u>** − Lead Plaintiff's plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly:

ORDER APPROVING
DISTRIBUTION PLAN

-1-

BYRNES & KELLER LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

(a) The administrative recommendations of the Court-approved Claims Administrator, A.B. Data Ltd.'s Class Action Administration Company ("A.B. Data"), to accept the Timely Eligible Claims, as stated in Exhibit D to the Miller Declaration, and the Late But Otherwise Eligible Claims, as stated in Exhibit E to the Miller Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject the Rejected Claims, as stated in Exhibit F to the Miller Declaration, are adopted;

(c) A.B. Data is directed to conduct the Initial Distribution of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by this Order and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve from the Net Settlement Fund to address any tax liability or claims administration-related contingencies that may arise.

Specifically, as stated in paragraph 39(a) of the Miller Declaration:

(1) A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. In accordance with the Court-approved Plan of Allocation, A.B. Data will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants; (2) A.B. Data will then, in accordance with the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose total *pro rata* share of the Net Settlement Fund is less than $10.00. These Claimants will not receive any payment from the Net Settlement Fund and will be so notified by A.B. Data; (3) After eliminating Claimants who would have received less than $10.00, A.B. Data will recalculate the *pro rata* shares of the Net Settlement Fund for

ORDER APPROVING
DISTRIBUTION PLAN

-2-

BYRNES & KELLER LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. This *pro rata* share is the Authorized Claimant's "Distribution Amount"; (4) Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds in subsequent distributions; and (5) 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. The remaining 5% of the Net Settlement Fund will be held in the Reserve to address any tax liability or claims administration-related contingencies that may arise following the Initial Distribution. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution described in subparagraph (f) below.

(d) To encourage Authorized Claimants to cash their checks promptly, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Lead Counsel and A.B. Data are authorized to take appropriate action to locate and contact Authorized Claimants who have not cashed their checks within said time as detailed in paragraph 39(b) footnote 9 of the Miller Declaration;

(e) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions stated in paragraph 39(b) footnote 9 of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be distributed to other Authorized Claimants in the Second Distribution. Similarly, Authorized Claimants who do not cash their distribution checks in the second or subsequent distributions, should

BYRNES & KELLER LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

such distributions occur, within the time allotted or on the conditions stated in paragraph 39(b) footnote 9 of the Miller Declaration will irrevocably forfeit any further recovery from the Net Settlement Fund;

(f) After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks (as provided in paragraph 39(b) footnote 9 of the Miller Declaration), but not earlier than seven (7) months after the Initial Distribution, A.B. Data will, after consulting with Lead Counsel, conduct the Second Distribution in which any amount remaining in the Net Settlement Fund after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting A.B. Data's unpaid fees and expenses incurred in administering the Settlement, including A.B. Data's estimated costs of conducting the Second Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution (other than Claims Paid in Full) who cashed their Initial Distribution check and are entitled to receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter at six-month intervals until Lead Counsel, in consultation with A.B. Data, determines that further distribution is not cost-effective;

(g) When Lead Counsel, in consultation with A.B. Data, determines that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after April 9, 2021, those Claims will be processed, and any otherwise valid Claims received after April 9, 2021, as well as any earlier-received Claims for which an adjustment was received after April 9, 2021, that resulted in an increased Recognized Claim, will be paid in accordance with subparagraph (h) below. If any funds remain in the Net Settlement

Fund after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the Investor Protection Trust ("IPT");

(h) No new Claims may be accepted after April 9, 2021, and no further adjustments to Claims received on or before April 9, 2021, that would result in an increased Recognized Claim may be made for any reason after April 9, 2021, subject to the following exception. If Claims are received or modified after April 9, 2021, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with A.B. Data, determines that an additional distribution is not cost-effective as provided in subparagraph (g) above, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, these Claimants, at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks;

(i) The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and

BYRNES & KELLER LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants;

(j) All of A.B. Data's fees and expenses incurred in the administration of the Settlement and estimated to be incurred in connection with the Distribution of the Net Settlement Fund as stated in the invoices attached as Exhibit G to the Miller Declaration are approved, and Lead Counsel is directed to pay the outstanding balance of $102,867.67 out of the Settlement Fund to A.B. Data; and

(k) Unless otherwise ordered by the Court, A.B. Data may destroy the paper copies of the Claims and all supporting documentation one (1) year after the Initial Distribution, and one (1) year after all funds have been distributed may destroy electronic copies of the same.

4. **Retention of Jurisdiction** − This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any other and further relief that this Court deems appropriate.

IT IS SO ORDERED this 21st day of June, 2021.

*[signature]*

Robert S. Lasnik
United States District Judge

Presented by:

**BYRNES & KELLER LLP**

ORDER APPROVING
DISTRIBUTION PLAN

-6-

BYRNES & KELLER LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000

*/s/ Bradley S. Keller*
Bradley S. Keller, WSBA# 10665
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
Telephone: (206) 622-2000
Facsimile: (206) 622-2522
bkeller@byrneskeller.com

*Liaison Counsel for Lead Plaintiff Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge*

ORDER APPROVING
DISTRIBUTION PLAN

-7-